## L. F. BOLDUC AND OTHERS, PARTNERS *d.b.a.* L. H. BOLDUC & COMPANY, v. NEW YORK FIRE INSURANCE COMPANY.[1]

March 25, 1955.

No. 36,264.

---

[1]Reported in 69 N. W. (2d) 660.

*Thomas, Bradford, King & Collatz,* for appellant.

*Harry G. Costello, Jr., B. Warren Hart,* and *Faricy, Moore & Costello,* for respondents.

NELSON, JUSTICE.

This action was instituted by the plaintiffs to collect insurance alleged to be due under a contract with the defendant company. The trial court found that there was at the time of the collision involved an existing contract of insurance; that a pile driver oriented and operated by the plaintiffs was clearly subject matter within the terms of the insurance contract; that the pile driver which was damaged was damaged within the terms of the insurance contract, while in force; and that the accident came within the provisions of the insurance contract, subject to the deduction of $150 thereunder provided by its terms depending upon the conditions under which the accident occurred and the type of injury sustained. Judgment was ordered in favor of plaintiffs in the amount of $3,571.52. Defendant moved the court to amend and supplement its findings of fact so as to read that the damage to the pile driver did not come within the terms of the contract of insurance and likewise its conclusions of law so that it would read that the plaintiffs were not entitled to recover, and in the alternative for a new trial upon two grounds; namely, errors of law occurring at the trial and excepted to at the time, and that the findings of fact were not justified by the evidence. The court entered its order denying the motions, and defendant appeals therefrom.

Most if not all of the essential facts have been stipulated, and it appears to be admitted both on the part of plaintiffs and the defendant company that the material facts are not in dispute. The portion

of the insurance contract in dispute here is entitled "CONTRACTORS' EQUIPMENT" and reads as follows:

"1.   On the following scheduled property, which the Assured warrants to be in sound condition at the time of attachment of this insurance:

\*     \*     \*     \*     \*

"Contractor's Equipment of every description including timbers, holds, and forms incidental and necessary to the assured's contracting business, the property of the assured, including such equipment that may be leased, loaned, or rented to the assured, and covering the same during transportation or otherwise anywhere within the continental limits of the United States and Canada against the risks and perils hereinafter specified and not otherwise, all of which property the assured warrants to be in sound condition upon the attachment of this insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$15,000.00.

"2.   THIS POLICY INSURES AGAINST LOSS OF OR DAMAGE TO THE INSURED PROPERTY CAUSED DIRECTLY BY:

\*     \*     \*     \*     \*

"(d)  Collision of any conveyance on which the insured property is being transported, with any other object, excepting that the coming together of cars, trucks, trailers, etc., during coupling, uncoupling or shifting or the striking of curbing or any portion of the roadbed or the ties of steam or electric railways shall not be deemed a collision; "(e)  Derailment or overturn of the transporting conveyance, (the mere tilting or leaning of the conveyance not to be deemed an overturn);

"(f)  Collapse of Bridges.

"3.   THIS POLICY DOES NOT INSURE AGAINST:

"(a)  Loss or damage caused by the weight of a load exceeding the registered lifting capacity of any machine;

"(b)  Loss or damage caused by rough handling, improper stowage or insufficient packing;"

An endorsement of this policy, effective at the time of the damage to the plaintiffs' pile driver, added to the list of perils insured against as follows:

"(j) Landslide, Collision, Upset or Overturning of equipment moving under its own power. It is agreed that each loss by landslide, collision, upset or overturn of equipment moving under its own power shall be adjusted separately and from the amount of each loss when determined the sum of $150.00. shall be deducted."

A property exclusion clause follows. Among the items of property now specifically excluded are "automobiles, trucks, and automobile truck trailers, materials and supplies, excepting materials and supplies necessary or incidental to the operation of property insured hereunder."

A letter from the defendant company to the plaintiffs dated before the time of the damage to the pile driver was received in evidence. It stated:

"We have your letter of April 12th and are agreeable to covering the pile driving machine and do not believe that it is necessary to endorse the contract or to charge an additional premium."

The loss involved under the policy grew out of an accident which occurred November 29, 1949, at which time plaintiff's pile driver was damaged. The pile driver consisted of a platform resting on movable skids, a tower boom, several winches and cables, an engine, boiler, hammer, a steam hose, and such other equipment as was necessary to drive pilings into submerged surfaces. It was fitted with cables running to its own winches. These were connected with stationary objects so that when in operation if the cables were slacked off or pulled in by the winches the pile driver would move itself from place to place by being pulled along on its own skids.

Just before the accident occurred there was a change of crews. The pile driver was resting on its skids over the water. These skids were supported by pilings which had been previously placed. The skids supporting the pile-driving rig were stationary at the time of the accident. The crew consisted of a foreman, an operator of the machinery, a loftsman stationed on the tower boom to guide the pilings into the jetted slot for hammering, and a fireman. These were all stationed on or about the equipment. The crew that was

relieved had left one line leading from one of the winches over the tower boom and attached to a piling in the group of pilings on the shore. The new crew became engaged in jetting a hole in the bottom of the lake for the placing of a new piling. This jetting operation consists in the driving of a long pipe into the lake bed and directing, through the pipe, a jet of water which displaces the lake bed at that spot and thereby makes room for the insertion of a piling. While this operation was being carried on, the machinery operator took up the slack on the line connected with the piling on the shore. This had the effect of disengaging the pile on the shore from the group of pilings in which it was located. Had the operation continued as intended, it would have brought the attached piling to the rig. In this instance the attached piling did not come free. The result was that the pile-driving rig overturned; while overturning, the right-hand skid broke and the pile driver as a result sustained additional damage upon impact with pilings previously placed, the stationary objects, and the water or lake surface.

The question involved here turns upon the effect of the words under (j) in the endorsement of the insurance policy where the perils insured against are stated to be "Landslide, Collision, Upset or Overturning of equipment moving under its own power." In the listing of perils, "landslide" and "collision" are set apart by commas, and paragraph (j) is explicit in saying that *each* loss by landslide, collision, upset or overturning of equipment moving under its own power shall be *adjusted separately* and from the amount of *each loss* when determined the sum of $150 shall be deducted. The words "moving under its own power" following the words "upset" and "overturning," without separation by comma at any point in this phraseology, present an ambiguity which can only be resolved by reading into its context other words of expression. The phraseology is that of the insurer.

█ In the construction of insurance policies this court has followed the rule that, although the language of the parties to an insurance policy must be given its natural and ordinary meaning and the words used are to be taken in their popular sense, such language and words as expressive of intent cannot be wholly disassoci-

ated from the purpose for and the subject to which they are applied. It must be determined from the language of the policy whether it is so plain that it precludes all questions of fact or whether the intent concerning the subject and the coverage must be determined from such facts as the use of the equipment and the environment in which it is used. Thus it must be determined here whether the equipment was intended to be covered generally while in operation or merely when moving from place to place. In the present case, the plaintiffs by requesting, and the defendant company by granting, the endorsement recognized the need of further coverage to fill a gap that the policy without this endorsement did not supply in the way of protection. It is only reasonable to assume that the plaintiffs wanted coverage for the equipment when in operation. The defendant, by its letter of April 14, made it clear that it was agreeable to cover the pile-driving machine against loss for the additional perils listed in the endorsement, and they were more than agreeable to it when it was stated therein that the defendant did not believe it necessary to endorse the contract or charge an additional premium. No doubt the parties could have agreed more explicitly.

The defendant contends that the words "equipment moving under its own power" meant in effect equipment moving under its own power from place to place in a horizontal plane. Certainly, if the words as related to the subject matter do not by their context compel so narrow an interpretation, it should be avoided. The language of the present policy is that of the defendant, and the well-understood principle of construction applies. If the language is not so explicit as to be free from ambiguity, insurance policy provisions are to be liberally construed in favor of the insured. It is well settled that, if the insurer seeks to avoid or reduce its liability, whether it be for nonfulfillment of an obligation or condition imposed on the insured or for the violation of an affirmative representation or condition subsequent, the burden is on the insurer to prove the facts to establish such avoidance or reduction. In the absence of evidence to the contrary, the presumption always exists that the insured has discharged his or its obligations under the insurance contract. While the burden is upon the plaintiff to prove the nature and extent of his

damages, the burden of doing so does not include proof that a clause limiting liability has become operative. Anderson v. Connecticut F. Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807, and cases therein cited; Johnson v. Federal L. Ins. Co. 190 Minn. 580, 252 N. W. 666, and cases therein cited; 9 Dunnell, Dig. (3 ed.) § 4659, subd. 16, and cases cited. When reasonably possible, words in an insurance policy must be so construed as to make effective the general insurance purpose under the terms and provisions of the policy. Words may well be construed contrary to their literal meaning in order to carry out the general object of the insurance contract. 9 Dunnell, Dig. (3 ed.) § 4659, subds. 11, 12, and cases cited.

We have in the present policy, by reason of the endorsement, insurance against damage to plaintiffs' pile driver caused directly by (1) landslide, (2) collision, and (3) upset or overturning of equipment moving under its own power. Does the policy cover damage suffered when the pile driver, as a result of its own power, overturns and strikes adjacent pilings and water surfaces, in effect colliding therewith? The court below held that it did. While the words "of equipment moving under its own power" can be said to modify the words "upset or overturning," if a similar modification is to be applied to the words "landslide" and "collision," words would have to be read into provision (j) of the endorsement making effective the defendant's claim that its general over-all meaning is limited to equipment moving under its own power from place to place. Both the words "landslide" and "collision" are cut off and set apart from the modifying phrase by commas. A further reading of provision (j) of the endorsement indicates that each was considered separately in case of loss and subject to a separate deduction in case of loss. Under the circumstances, whatever ambiguity exists must be construed in favor of the insured so that any damage to the pile driver caused by collision is covered whether it meets the requirement of moving under its own power or not.

It is not necessary to a collision between two objects (here stationary pilings and water) that both should be in motion. When the pile driver overturned it struck stationary pilings which had been set in the water of the lake; both would come within the meaning

of the word "collision" as used in the policy, for it is well established that the striking of a water surface or land body may be considered within the coverage of a collision policy. Collision means the act of colliding, and imports striking together. Harris v. American Cas. Co. 83 N. J. L. 641, 85 A. 194, 44 L.R.A. (N.S.) 70; Tinker v. Boston Ins. Co. 106 Okl. 206, 233 P. 1058. It has been held that where a policy insures against damage which grows out of overturning or collision, an overturn and collision permits recovery on the collision coverage even though the insurer may be free from liability under the overturning provision.[2]

In the case of Life & Cas. Ins. Co. v. Kinney, 206 Ark. 804, 177 S. W. (2d) 768, it was held that equipment moving under its own power covers equipment that normally moves under its own power, equipment that is self-propelled. That the plaintiffs' pile driver was self-propelled must be admitted and needs no argument. In the Kinney case a gasoline-propelled tow truck was involved. During an attempt to lift a trailer, the tow truck was lifted off the ground and then dropped. This caused a rebound which resulted in the bumper striking and fatally injuring the insured. It was held that the insured in that case was within a policy providing coverage if insured was struck by a vehicle "which is being propelled by * * * gasoline." The Arkansas court held that vehicle "which is being propelled by * * * gasoline" meant a vehicle (206 Ark. 807, 177 S. W. [2d] 770) "which was normally propelled by gasoline," and that, since the tow truck was normally propelled by gasoline, there was coverage even though at the exact time the truck struck the death blow it was propelled by the rebound of the truck tires.

■ In the case at bar some part of the machinery of the pile driver must admittedly have been moving or in motion under its

---

[2]Aetna Cas. & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A. L. R. 1013; Lepman v. Employers Lia. Assur. Corp. 170 Ill. App. 379; Universal Service Co. v. American Ins. Co. 213 Mich. 523, 181 N. W. 1007, 14 A. L. R. 183; Columbia Ins. Co. v. Chatterjee, 93 Okl. 249, 219 P. 102; Ringo v. Automobile Ins. Co. 143 Ore. 420, 22 P. (2d) 887; Pred v. Employers Ind. Corp. 112 Neb. 161, 198 N. W. 864, 35 A. L. R. 1003; Great American Mut. Ind. Co. v. Jones, 111 Ohio St. 84, 144 N. E. 596, 35 A. L. R. 1023.

own power at the time the rig overturned. The entire pile-driving unit necessarily moved out of balance prior to the time that the forces of gravity took over and brought the pile driver into collision with said pilings and the lake surface. It was the power of the pile-driving unit which moved the machinery and which, at the time of the accident, pulled the entire pile-driving unit over sideways. The power which pulled the entire pile unit over sideways was self-contained power generated by its own engine. It was admitted in the stipulated facts that the pile driver was damaged somewhere in the operation consisting of the pulling in of a cable running from the pile driver to a stationary piling. The power that was used to pull the pile driver from an upright position to a horizontal position came from the pile driver itself. It seems to be the fact that the damage to the pile driver was caused directly as a result of over-turning while the entire unit and its machinery was in some manner in motion under its own power. There are decisions which have held that insurance covering "driving," "riding," and "transportation," which words suggest movement from place to place, nevertheless, provide coverage for activities which occur when no movement from place to place is occurring. Johnson v. Federal L. Ins. Co. *supra;* Provident L. & Acc. Ins. Co. v. Nitsch (5 Cir.) 123 F. (2d) 600, 138 A. L. R. 399; cf. Williams v. Mannheim Ins. Co. 237 Mass. 477, 130 N. E. 45. It is a well-established, familiar rule that, if a policy of insurance be susceptible of two meanings, that construction is to be adopted which is most favorable to the insured. That conditions and stipulations in such a policy are to be construed most strongly against the insurer follows and is likewise well established. Harris v. American Cas. Co. *supra;* Life & Cas. Ins. Co. v. Kinney, *supra.*

The defendant cites Hildebrand v. Washington Nat. Ins. Co. 155 Kan. 220, 124 P. (2d) 510, as controlling here. In that case the insured sustained an injury from a running combine when the combine was standing still and while the insured was not riding on it. There was involved a personal injury policy insuring the policy-holder against accidental injury "While riding in or on any moving farm vehicle." We believe that the Hildebrand case is clearly dis-

tinguishable on its facts and is not applicable to the instant case for here it is apparent that the pile-driving machinery was in motion and the entire pile-driving rig was moving in such manner that it lost balance and overturned.

While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must on appeal consider the testimony in the light most favorable to the prevailing party. When an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence, and such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708.

In view of the well-established rule that, if the language of the policy is that of the insurer and it contains an ambiguity or ambiguities, such contract language will be construed against the one who drafted it, and there being a clear ambiguity here, we hold that the policy must stand as written and that the coverage provided by the policy and the attached endorsement is enforceable against the loss sustained, in the manner found by the court below.

Affirmed.