ARTHUR COHLER AND ANOTHER, A COPARTNERSHIP
d.b.a. SECONDARY FINANCE COMPANY, AND OTHERS v.
DEAN MERLIN SMITH AND ANOTHER.

158 N. W. (2d) 574.

April 26, 1968—No. 40,852.

---

182

*Feidt, Lang & Pauly,* for appellants.

*Markve & Aune-Markve* and *Strong, Tully & Bush,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Sheran, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying plaintiffs' alternative motion for amended findings or a new trial; and from a judgment and decree terminating the rights of plaintiffs in the property which is the subject of this litigation.

Plaintiffs, Arthur Cohler and Harvey D. Cohen, a copartnership doing business as Secondary Finance Company; the Melco Investment Company; and George G. Game, commenced this action to determine their rights under a contract for deed. The vendor's interest therein is owned by defendants, Dean Merlin Smith and Warren Hertenstein. Plaintiffs' case and a Torrens proceeding instituted by defendants were consolidated for trial. Findings were filed April 7, 1966, whereby the court determined that plaintiffs' rights under the contract had been terminated. On September 14, 1967, the district court entered its order and decree of registration adjudging that defendants were the owners of the property as joint tenants.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear to be follows: The property involved on this appeal consists of an apartment building located at 507 East 14th Street, Minneapolis. A contract for deed was entered into July 31, 1956, whereby George W. Smith and Selena S. Smith, husband and wife, sold

and agreed to convey the apartment building to Anthony Benincasa and Anna S. Benincasa, husband and wife.

The vendor's interest in the contract and the fee ownership in the apartment building were transferred to defendants by deed dated March 19, 1962, and recorded April 9, 1962. It appears from the record that thereafter all the payments made to defendants pursuant to the terms of the contract were made by the check of First Property Corporation.

On October 15, 1962, the Benincasas, by assignment and quitclaim deed, transferred their interest in said property and contract to Lancaster Apartments, a copartnership of which William Seltz was one of the partners. Neither the deed nor the assignment was ever recorded with the Register of Deeds of Hennepin County.

On September 23, 1963, Lancaster Apartments, by assignment and quitclaim deed, transferred its interest in said property and contract to plaintiff Melco Investment Company. Neither instrument was ever recorded, but mortgage registration taxes were paid. Whatever interest First Property had in the property it assigned to Melco September 6, 1963, by an instrument which also was not recorded. On September 18, 1963, Melco mortgaged its interest in the apartment building property and other property to plaintiff Secondary Finance Company. On July 27, 1964, by instrument filed July 31, 1964, in the office of the Register of Deeds, Melco assigned rents due from the building to plaintiff Game. He does not appear as a party to this appeal.

The record indicates that on and before December 1, 1964, there was substantial default in the obligations of the vendee under the contract for deed, and this default continued to the date of trial without payments or tender of payments having been made. Notice of cancellation of the contract for deed specifically directed to Anthony Benincasa, Anna S. Benincasa, William Seltz, First Property Corporation, and Melco was served on each of them either on December 1 or December 2, 1964. The identical notice was served on Secondary and Game on January 13, 1965; on National Properties, Inc., on January 21, 1965; and on certain other persons and firms who do not appear to claim any interest in the property on other dates in January and February 1965.

Defendants went to the apartment building property on or about January 5, 1965, and talked to the caretaker, telling him at that time that the contract for deed had been canceled and taking possession of the property. Since that time they have collected the rents and applied them to their own use.

Defendants were at no time furnished copies of the assignments or deeds, nor given any written notice of the claim of any party other than the Benincasas to an interest in the property, except for the fact that payments were made by First Property Corporation. Neither was any notice given to defendants of the mortgage from Melco to Secondary nor of the July 31, 1964, assignment of rents from Melco to Game, except such constructive notice as may follow from the recording of these instruments. In fact defendants never had any actual notice of these instruments until their counsel saw a record of them in the tract index in the office of the Register of Deeds of Hennepin County in January 1965.

An abstract of title was admitted in evidence, showing that on December 1, 1964, there were judgments docketed in the office of the clerk of Hennepin County District Court against Melco totaling over $25,000.

The legal issue before us is whether the contract for deed dated July 31, 1956, was terminated by expiration of the 30-day periods following the service on plaintiffs of the notice of cancellation since no payments or tender of payments were made by any of plaintiffs within such periods. Plaintiffs contend that defendants did not effect service of notice complying with the requirements of Minn. St. 559.21.

Defendants as the fee owners and the holders of the vendor's interest in the contract for deed were faced with substantial default in the payments specified in the contract, including delinquent taxes, mechanics liens of record against the premises, delinquencies in the mortgage payments required to be made, and delinquencies in other payments, which, according to statements made during the oral arguments on appeal before this court, ran in excess of $7,000. During the more than two years that defendants held the vendor's interest in the contract, all the payments they received were made by First Property Corporation. As stated, defendants were not furnished with copies of any assignments or deeds nor were they given written or oral notice of the claims

of any parties claiming an interest in the property other than the original vendees, the Benincasas. The original contract for deed was never recorded until after the cancellation proceedings and no assignments of the vendees' interest or quitclaim deeds in connection therewith have ever been recorded.

Defendants argue that those parties whose names were added to the notice of cancellation after defendants' counsel had examined the tract index in the office of the Register of Deeds had each in turn 30 days from the date the notice was served on them, January 13 and January 21, 1965, to make up the defaults specified in the notice of cancellation. The defaults under the contract were not removed, and on March 6, 1965, counsel for defendants made an affidavit of failure to comply with the notice and the cancellation proceedings were thereafter duly filed with the Register of Deeds of Hennepin County.

■ We agree with the contention of defendants that after the notice of cancellation specifying the defaults involved had been served upon all persons who might possibly claim any interest under the contract and those parties had not remedied the defaults by making payments within 30 days after such service, the contract for deed was canceled and the interest of any parties claimed under it terminated pursuant to the provisions of § 559.21. See, 20 Dunnell, Dig. (3 ed.) § 10091(14), and cases cited under note 67.

■ The purpose of serving the notice upon the holders of a vendee's interest in the contract and upon their assigns is to enable them to have notice of, and an opportunity to make up, the default. The record is clear that in this case that opportunity was given in full measure.

■ Plaintiffs take the position that, since the notice was not served on all of them at the same time, it is not effective. The trial court, however, held to the contrary, and in its memorandum, attached to and made a part of the findings of fact, conclusions of law, and order for judgment, stated as follows:

"The statute, Sec. 559.21 relating to service of notice of cancellation of contracts such as the one here involved does not require that all persons required to be served be specifically named in the notice or that

all such persons be served at the same time. Here, all persons having such an interest were given notice and an opportunity to remove the default within the statutory period. The delay between service of Melco and service of Secondary was not great. The delay under the circumstances was justified and understandable. Under the decision here it is difficult to see unjust prejudice to any plaintiff. To adopt plaintiffs' contentions would certainly result in injustice to defendants. It is noted that while plaintiffs allege that Melco is and has been ready, willing and able to comply with the terms and conditions of the contract, there is no attempt to establish this at the trial. On the contrary, the evidence there was on the subject points in a different direction."

So far as § 559.21 is applicable herein, it provides:

"When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser * * * or assigns * * * a notice specifying the conditions in which default has been made, and stating that such contract will terminate 30 days after the service of such notice unless prior thereto the purchaser shall comply with such conditions and pay the costs of service, together with an amount to apply on attorneys' fees * * *.

\*     \*     \*     \*     \*

"If, within the time mentioned, the person served complies with such conditions and pays the costs of service and attorneys' fees as provided herein, the contract shall be thereby reinstated; but otherwise shall terminate."

The trial court took the position that defendants had sufficient actual notice of the interest of Melco in the property so that Melco was named in the notice of cancellation and that under the circumstances they had such notice of the interest of Secondary that notice of cancellation was required to be given to that plaintiff. The combined authority of Stannard v. Marboe, 159 Minn. 119, 198 N. W. 127, and Henschke v. Christian, 228 Minn. 142, 36 N. W. (2d) 547, supports the conclusion of the court below in that regard.

Secondary was classed by the court as an assignee under § 559.21, quoting the following rule from the Henschke case (228 Minn. 146, 36 N. W. [2d] 550) in support of its conclusion:

"One is not a bona fide purchaser and entitled to the protection of the recording act, though he paid a valuable consideration and did not have actual notice of a prior unrecorded conveyance from the same grantor, if he had knowledge of facts which ought to have put him on an inquiry that would have led to a knowledge of such conveyance."

The rule was applied by the trial court on the theory that defendants had knowledge of facts which ought to have put them on an inquiry that would have led to knowledge of Secondary's interest. They did, as a matter of fact, on the basis of the knowledge of Melco's interest, make further inquiry which revealed the interest of Secondary, although this occurred after the first service of notice of cancellation. Defendants contend that they did not have constructive notice because they learned of Secondary's mortgage through the tract index, an instrument not required to be kept. The court assumed that under statutory requirements reference to the Secondary mortgage did appear in the grantor and grantee index required by § 386.03.

Nevertheless, it does not follow that plaintiffs are entitled to the relief which they requested when the record herein is viewed as a whole. Section 559.21, providing for service of notice of cancellation of land contracts, does not require that all persons required to be served be specifically named in the notice or that all such persons be served at the same time. In the instant case all persons having an interest under the contract were given notice and each received an opportunity to remove the default within the statutory period. The delay between the service of cancellation notices herein was not great. The delay under the circumstances was not unreasonable. On the facts it was clearly justified and understandable.

None of plaintiffs, or the others served, removed the defaults. The last 30-day period in which to do so expired February 21, 1965, although the affidavit of failure to comply was withheld until March 6, 1965. While plaintiffs allege that Melco is and has been ready, willing, and able to

comply with the terms and conditions of the contract, the record is clear that no attempt was made to establish this at the trial. The record does show that defendants, more than 30 days after the notices of cancellation were served on December 1 and 2, 1964, but prior to service of cancellation notices upon the assigns of Melco, during January 1965, took possession of the property and in fact applied the rents for their own use and benefit.

Based on these facts, plaintiffs contend that there has been a waiver by defendants of their right of cancellation, citing to support their contention Jandric v. Skahen, 235 Minn. 256, 50 N. W. (2d) 625; Odegaard v. Moe, 264 Minn. 324, 119 N. W. (2d) 281; Miller v. Snedeker, 257 Minn. 204, 101 N. W. (2d) 213; Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846. The trial court disposed of this contention by saying:

"There is a substantial and clear-cut difference between acceptance of a payment under a contract after service of notice of cancellation and the taking possession of property and collecting rents under a claim that cancellation has become effective. The first act is inconsistent with the claim of forfeiture. The second is not. The first may constitute waiver. the second does not, if the usual requirements for waiver are applied."

■ Waiver is defined as a voluntary relinquishment of a known right. Voluntary choice is of the essence of waiver and not mere negligence, even though waiver may be inferred from negligence. It is largely a matter of intention and there can be no waiver without actual or implied intent to waive. Therefore, it must be based on a full knowledge of the facts. See, 20 Dunnell, Dig. (3 ed.) § 10134.

In Swanson v. Miller, 189 Minn. 158, 248 N. W. 727, it was held that the acceptance of a money payment due under a contract, during the period allowed for payment under the terms of an outstanding statutory notice of forfeiture which had specified as defaults under the contract the vendees' failure to make payments on a mortgage they had assumed, was not, on the facts of the case, a waiver of the benefit of the notice where the vendees failed to make the mortgage payments within the statutory period.

The court in the instant case correctly concluded that application of the well-established rules relating to waiver to the facts here compels the conclusion that there was no waiver by defendants.

It became the prerogative of the trial judge, sitting in the instant case without a jury, to resolve the conflicts in the testimony and to determine which of the litigants had the better equities, and on those issues, the trial judge found for defendants. The scope of this court's review is a careful examination of the record to ascertain if the evidence as a whole fairly supports the findings and if these in turn support the conclusions of law and the judgment. While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must consider the testimony in the light most favorable to the prevailing party.

We are governed also by the rule that when an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of the jury and will not be reversed on appeal unless they are manifestly contrary to the evidence. We have said that such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. See, G. C. Kohlmier, Inc. v. Albin, 257 Minn. 436, 101 N. W. (2d) 909; Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660; 1B Dunnell, Dig. (3 ed.) §§ 388, 411, and cases cited.

We reach the conclusion that there is ample evidence in the record to support the trial court's findings, conclusions of law, and the order and judgment appealed from.

Affirmed.