**Leroy W. SADLER and Virginia M. Sadler, Plaintiffs-Appellees,**

v.

**Melvin W. BALLANTYNE, and Ralph M. Clark as Receiver of Amidon East, Ltd., Defendants-Appellants,**

and

**Continental Title Co., Defendant.**

**Civ. No. 9441.**

Supreme Court of North Dakota.

June 28, 1978.

As Corrected July 13, 1978.

Rehearings Denied Aug. 3, 1978.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiffs·and appellees; argued by John L. Sherman, Dickinson.

Pringle & Herigstad, Minot, for defendant and appellant Melvin W. Ballantyne; argued by Thomas A. Wentz, Minot.

Bair, Brown & Kautzmann, Mandan, and Law, Nagel & Clark, Denver, Colo., for defendants and appellants Ralph M. Clark, as Receiver of Amidon East, Ltd. and Continental Title Co.; argued by Malcolm H. Brown, Mandan.

PAULSON, Justice.

This is an appeal by the defendants, Melvin W. Ballantyne [hereinafter Ballantyne], and Ralph M. Clark, as Receiver of Amidon East, Ltd. and Continental Title Company [hereinafter Clark], from the judgment of the Slope County District Court entered October 20, 1977, wherein the court quieted title to certain farm property in the plaintiffs, Leroy W. Sadler and Virginia M. Sadler [hereinafter the Sadlers].

On October 16, 1972, the Sadlers and Ballantyne executed a contract for deed whereby the Sadlers sold their 3200-acre farm located in Slope County to Ballantyne for a price of $326,500.00. Pursuant to the terms of this contract for deed Ballantyne was required to pay $32,650.00 upon execution of the agreement and to pay the balance of the purchase price with twenty-five annual installments of $11,754.00 each plus interest at the rate of 6¾% on all deferred balances. The first annual installment was due October 16, 1973, and an annual installment was due each October 16 thereafter until the total price had been paid. Pursuant to the contract for deed, Ballantyne was also required to pay the taxes and assessments on the property beginning in 1973 and to continue all subsequent years thereafter during the life of the contract. Upon execution of the contract for deed, the Sadlers and Ballantyne had an agreement whereby the Sadlers continued to farm the property on a share-crop basis with Ballantyne.

On September 20, 1974, the Sadlers and Ballantyne executed a second contract for deed whereby Ballantyne sold the same 3200-acre farm property back to the Sadlers for a price of $600,000.00. Under the terms of this second contract for deed, the Sadlers were required to pay $100,000.00 upon execution of the agreement and to pay the balance with twenty-five annual installments of $20,000.00 each plus interest at the rate of 6¾% on the unpaid balance. The first annual installment was due on November 1, 1975, and an annual installment was due on November 1 each year thereafter until the total price had been paid. Under the second contract for deed Ballantyne was required to pay the taxes on the property for 1974 and prior years, and the Sadlers were required to pay the taxes on the property for 1975 and all subsequent years thereafter. There was also a clause in the second contract for deed which specifically expressed that it was the intent of the parties to have the October 16, 1972, contract for deed as well as the September 20, 1974, contract for deed continue in full force and effect.

The Sadlers and Ballantyne also executed a written contract, on September 18, 1974, in which the Sadlers agreed to deliver to Ballantyne 14,400 bushels of hard red spring wheat as follows:

"(a) 9,400 bushels now situated in a grain elevator, transfer to be made immediately;

"(b) 5,000 bushels of grain to be delivered on or before the 1st day of April, 1975, to a grain elevator selected by Leroy Sadler, freight to be paid by Melvin Ballentyne [sic]."

The contract stated that Ballantyne was to receive the 14,400 bushels of wheat "FOR AND IN consideration of One Dollar ($1.00) and other good and valuable consideration". It is undisputed, however, that the parties' actual intent was that 10,000 bushels of the 14,400 bushels of wheat were to be delivered to Ballantyne as part of the Sadlers' down payment for the farm purchase under the September 20, 1974, contract for deed, and the remaining 4,400 bushels were in consideration of Ballantyne's share of the 1974 crop.

As of November 6, 1974, Ballantyne had not received the 14,400 bushels of wheat and his counsel sent a letter to the Sadlers' counsel requesting the storage tickets to transfer the wheat pursuant to the September 18, 1974, agreement. On January 16, 1975, the Sadlers' counsel sent a letter to Ballantyne's counsel, stating that the storage tickets for the 14,400 bushels of wheat would not be sent to Ballantyne until after Ballantyne had paid the 1973 and 1974 real estate taxes on the farm property, had paid the past due installments on the October 16, 1972, contract for deed, and had updated the farm property abstracts. During August of 1975, Ballantyne received from the New England Elevator Company the net proceeds for 9,400 bushels of wheat, but the Sadlers retained 5,000 bushels of wheat due and owing to Ballantyne. The Sadlers'

counsel, by telephone conversation with Ballantyne's counsel, requested authorization to sell the 5,000 bushels of wheat to acquire money to pay the delinquent 1973 and 1974 real estate taxes. The Sadlers never received such authorization from Ballantyne. On November 16, 1976, the Sadlers released the remaining 5,000 bushels of wheat to Ballantyne's account.

On March 21, 1975, the Sadlers served upon Ballantyne a notice of cancellation of the October 16, 1972, contract for deed, pursuant to Chapter 32–18 of the North Dakota Century Code. The notice of cancellation informed Ballantyne that he was in default of the October 16, 1972, contract for deed in the following respects: (1) by failure to pay the 1973 and 1974 real estate taxes on the farm property in the amount of $4,706.30, including interest and penalties; and (2) by failure to pay the October 16, 1974, annual installment payment of principal and interest in the amount of $30,913.02. The notice further informed Ballantyne that the October 16, 1972, contract for deed would be canceled one year from service of the notice upon him unless he cured the specified defaults within that one-year period.

On November 11, 1975, within the one-year cure period, Ballantyne paid the Sadlers the 1974 annual installment payment which was in default and also paid the 1975 annual installment payment which was currently due.[1] With this payment Ballantyne sent the Sadlers a letter stating that "This would bring both contracts up to date as of November 1, 1975." The Sadlers understood the November 11, 1975, letter from Ballantyne to mean that Ballantyne had made payment of the 1973 and 1974 real estate taxes for the farm property to the county auditor and county treasurer. Consequently, the Sadlers accepted the 1974 and 1975 installment payments from Ballantyne on the October 16, 1972, contract

1. Ballantyne actually sent the Sadlers a check in the amount of only $5,629.60. This amount represented the net amount due the Sadlers for the 1974 and 1975 installment payments on the October 16, 1972, contract for deed less the 1975 installment payment due to Ballantyne from the Sadlers on the September 20, 1974, contract for deed.

for deed.[2] Ballantyne had not, in fact, paid the 1973 or 1974 real estate taxes. Upon learning that Ballantyne had not paid the real estate taxes within the one-year cure period, the Sadlers, on March 23, 1976, recorded an affidavit canceling the October 16, 1972, contract for deed pursuant to § 32–18–05, N.D.C.C. On that same date, March 23, 1976, the Sadlers also paid the delinquent real estate taxes together with penalty and interest in the amount of $5,140.52. However, the Sadlers retained the 1974 and 1975 installment payments which they received from Ballantyne on the October 16, 1972, contract for deed and have not tendered their return to Ballantyne.

On September 9, 1976, the Sadlers commenced a quiet title action with the Slope County District Court to confirm the statutory cancellation of the October 16, 1972, contract for deed. The Sadlers also requested the district court to declare the September 20, 1974, contract for deed terminated and to award the Sadlers a return of the amounts they had paid on the September 20, 1974, contract for deed in the amount of $157,541.10 plus interest. The district court, on October 20, 1977, filed very thorough and extensive findings of fact and conclusions of law. The district court determined that the October 16, 1972, contract for deed had been properly canceled pursuant to the provisions of Chapter 32–18, N.D.C.C., for Ballantyne's failure to pay the 1973 and 1974 real estate taxes on the farm property or to correct such defaults within the statutory period. The district court further determined that as a result of the cancellation of the October 16, 1972, contract for deed Ballantyne lost all title to and interest in the farm property and that Ballantyne would be unable to convey title to the Sadlers under the September 20, 1974, contract for deed. Consequently, the district court declared the September 20, 1974, contract "abandoned and rescinded as a matter of law", and the district court further determined that the

Sadlers were entitled to recover all payments they had made to Ballantyne on the September 20, 1974, contract for deed in the amount of $204,241.10, together with costs and disbursements. Judgment was entered accordingly.

Ballantyne now appeals from the judgment of the district court and asserts that, under the circumstances of this case, the Sadlers should not be allowed to cancel the October 16, 1972, contract for deed for Ballantyne's failure to pay the 1973 and 1974 real estate taxes. Ballantyne requests this court to reverse the judgment of the district court and to reinstate both the October 16, 1972, contract for deed and the September 20, 1974, contract for deed.

Ballantyne was the sole owner of the Continental Title Company, Incorporated, which corporation was the general partner of Amidon East, Ltd., a limited partnership. These entities incurred certain problems with the Securities and Exchange Commission regulations and, as a result, Ralph M. Clark was appointed receiver of Continental Title Company, Inc., and Amidon East, Ltd., on July 22, 1975. The court, on Clark's motion for substitution, named Clark a party defendant in the Sadlers' quiet title action and Clark also appeals from the judgment of the district court. Clark asserts on this appeal that the Sadlers failed to give an effective notice of cancellation of the October 16, 1972, contract for deed because they failed to serve the notice of cancellation on certain assignees of Ballantyne's rights under that contract for deed. We shall dispose of this issue first.

■ Pursuant to § 32–18–03, N.D.C.C., notice of cancellation must be served "upon the vendee or purchaser, or his assigns". When the seller has knowledge or notice that the buyer in a land contract has assigned his interest therein to some other person, it is incumbent upon the seller to serve notice of cancellation upon the assignee. *Buller v. Falk*, 41 N.D. 624, 171 N.W. 823 (1919).

2. On November 19, 1975, the Sadlers returned $1,396.20 to Ballantyne with a letter informing him that he had erred in his computation of the interest due on the October 16, 1972, contract for deed, and that, as a result of the error, he had made an excessive interest payment.

■ In the instant case, the district court made the following finding of fact:

"XVII.

"That no written assignment of the Contract for Deed of October 16, 1972, was ever made by any person, firm or corporation to any other person, firm or corporation, except two purported assignments dated August 31, 1977 (Defendants Exhibits D and E) which the Court finds were not recorded and were not timely as notice to Plaintiffs . . . ."

The district court concluded:

"5. No notice of claims of interests in the Contract for Deed dated October 16, 1972, by others through and under Defendant Ballentyne was imparted or conveyed to either of Plaintiffs, nor was any information imparted to them sufficient to create a duty to inquire as to assignments of interests in the premises to other parties, and Plaintiffs were not required to serve the Notice of Cancellation of Land Contract on anyone except Defendant Ballentyne, but if the Contract for Deed had been assigned to Continental Title as alleged, but not proven by Defendants, the requirement of notice to Continental Title Company and other parties claiming under Continental Title can consist only of Ballentyne Brothers, a partnership, Continental Title Company, a corporation, or Amidon East, Ltd., a limited partnership, and Defendant Ballentyne was a 50% partner in Ballentyne Brothers, Defendant Ballentine was a principal stockholder (50%) and President of Continental Title Company, and Continental Title Company was the sole general partner in the limited partnership of Amidon East, Ltd., and thereby received actual notice by the service upon Defendant Melvin W. Ballentyne who was the authorized agent and representative of all of said entities."

We conclude that there is substantial evidence in the record to support the foregoing finding of fact and conclusion of law made by the district court.

Clark asserts that Leroy W. Sadler's deposition was taken in Denver, Colorado, on January 21, 1975, involving a Securities and Exchange Commission matter at which Sadler was asked questions regarding interest Continental Title Company and Amidon East, Ltd. might have in the same farm property which was the subject matter of the contracts between Ballantyne and the Sadlers. Clark also asserts that at this deposition Leroy W. Sadler was shown a brochure that had a description in it identical to the farm property which is the subject matter of the contracts between Ballantyne and the Sadlers. Clark alleges that, based upon the deposition, the Sadlers had sufficient information to put them on notice "that something was going on". However, Clark concedes in his appellate brief that "there was no written assignment from Ballantyne to either Continental Title Co., Amidon East, Ltd. or anyone else". Furthermore, Clark has entirely failed on this appeal to state to which persons or entities Ballantyne allegedly assigned his interest under the October 16, 1972, contract for deed; nor does Clark state on what date or in what manner the alleged assignments occurred. The record is void of evidence to prove that Ballantyne had assigned any of his interest in the October 16, 1972, contract for deed to any person or entity prior to the time notice of cancellation was served upon Ballantyne on March 21, 1975. We uphold the conclusion of the district court that the Sadlers' notice of cancellation was in compliance with Chapter 32–18, N.D.C.C., and that there was no assignment of Ballantyne's interest under the October 16, 1972, contract for deed which required the Sadlers to serve notice of cancellation upon any assignee under § 32–18–03, N.D.C.C.

Appellant Ballantyne has raised two issues which he delineates as follows:

1. Do payment and acceptance of both current and default installments on a contract for deed, after statutory notice of cancellation, reinstate the contract where defaulted taxes remain unpaid?

2. Can contract sellers cancel the contract (and cause the buyer to forfeit

$415,000) for nonpayment of $5,000 of taxes where seller owes buyer $460,000 on a second contract for deed covering the same land?

Upon Ballantyne's default on the October 16, 1972, contract for deed, the Sadlers chose to avail themselves of the statutory cancellation procedures under Chapter 32–18, N.D.C.C. The Sadlers informed Ballantyne through the notice of cancellation that, pursuant to § 32–18–04, N.D.C.C., he had one year to cure his defaults by paying the October 16, 1974, installment and the 1973 and 1974 real estate taxes, in order to reinstate the contract. Within the one-year period Ballantyne paid the 1974 and 1975 installment payments, but he failed to pay the 1973 and 1974 real estate taxes. Consequently, on March 23, 1976, the Sadlers recorded an affidavit canceling the October 16, 1972, contract for deed, pursuant to the requirements of § 32–18–05, N.D.C.C.

 The seller may waive his right to cancel a contract for deed upon the buyer's default if the seller, having a full knowledge of the facts, acts in a manner inconsistent with the right to cancel or forfeit the contract. *Babb's, Inc. v. Babb,* 169 N.W.2d 211 (Iowa 1969); *Odegaard v. Moe,* 264 Minn. 324, 119 N.W.2d 281 (1962). However, waiver by the seller of the right to cancel a contract cannot be based upon the conduct of the seller which occurred while the seller was acting without a full knowledge of the facts. *Cohler v. Smith,* 280 Minn. 181, 158 N.W.2d 574 (1968). We conclude that the following factors in this case, when considered together, constitute conduct by the Sadlers resulting in a waiver of their right to cancel the October 16, 1972, contract for deed for Ballantyne's failure to pay delinquent real estate taxes:

(1) The Sadlers repurchased the farm property from Ballantyne under the September 20, 1974, contract for deed, resulting in a net obligation by them to Ballantyne of approximately $273,500.00 for the farm property;

(2) Upon learning that Ballantyne had not cured his defaults on the 1973 and 1974 real estate taxes, the Sadlers retained and did not tender back the installment payments Ballantyne had made on November 11, 1975; and

(3) The Sadlers refused to transfer 14,400 bushels of wheat due and owing to Ballantyne on the ground that such transfer would not be made until Ballantyne paid the annual installment upon which he had defaulted and also paid the delinquent real estate taxes.

To ascertain the actual relationship which existed between the Sadlers and Ballantyne at the time of the attempted cancellation, it is necessary to consider both the October 16, 1972, contract for deed and the September 20, 1974, contract for deed which had been executed by these parties between themselves. In 1972 Ballantyne purchased the Sadlers' farm property for $326,500.00 plus interest. In 1974 the Sadlers bought the same farm property back from Ballantyne for $600,000.00 plus interest. Since both sales were made by contract for deed the legal title was never transferred and at all times remained in the Sadlers. However, upon execution of the second contract for deed in 1974 the Sadlers owed Ballantyne a net difference in price for the farm property of approximately $273,500.00, on the repurchase. Consequently, the Sadlers' legal title was subject to Ballantyne's equitable interest arising from the October 16, 1972, contract for deed. The Sadlers' repurchase of the farm property in 1974 from Ballantyne at a price approximately double that at which Ballantyne initially purchased the farm property from the Sadlers was an act entirely inconsistent with the Sadlers' subsequent attempt to cancel the 1972 contract for deed for Ballantyne's failure to make certain payments thereunder. To reach any other conclusion would be to place form over substance.

Ballantyne also asserts that the Sadlers waived the right to cancel the contract under Chapter 32–18, N.D.C.C., for Ballantyne's failure to pay the real estate taxes when the Sadlers accepted, on November 11, 1975, the 1974 and 1975 installment payments from Ballantyne.

When Ballantyne tendered, on November 11, 1975, the 1974 installment payment which was in default and the 1975 installment which was currently due, he informed the Sadlers by letter that such payments would "bring both contracts up to date as of November 1, 1975". As the trial court found, it was reasonable for the Sadlers, based upon that letter, to believe Ballantyne had paid the delinquent 1973 and 1974 real estate taxes. The Sadlers' acceptance of the installment payments from Ballantyne on the October 16, 1972, contract for deed, although inconsistent with the cancellation of such deed, did not constitute a waiver of the right to cancel because the Sadlers were acting under the reasonable belief, based upon Ballantyne's letter, that Ballantyne had fully cured all defaults. Consequently, the Sadlers' acceptance of the installment payments did not constitute a waiver of their right to cancel the contract for deed under Chapter 32–18, N.D. C.C. However, when the Sadlers subsequently learned that Ballantyne had not, in fact, paid the 1973 and 1974 real estate taxes, they retained both installment payments that Ballantyne had made to them on November 11, 1975. The Sadlers promptly recorded an affidavit of cancellation under § 32–18–05, N.D.C.C., but they did not tender either installment payment back to Ballantyne. We agree with the following statement made by the Iowa Supreme Court in *Babb's, Inc. v. Babb,* 169 N.W.2d 211, 214 (Iowa 1969):

> "It is not consistent or equitable for a party to declare a contract forfeited and continue to accept partial payments thereunder. The vendor takes the property back and keeps the payments made. Any payments received and retained after the declaration of forfeiture would be a windfall to which the vendor is not in equity entitled."

We conclude that the Sadlers' retention of the installment payments, after learning that Ballantyne had not paid the delinquent real estate taxes, was inconsistent with an intent to cancel the January 16, 1972, contract for deed and constituted a waiver of the right to cancel such contract under Chapter 32–18, N.D.C.C.

Pursuant to the agreement executed on September 18, 1974, the Sadlers became obligated to transfer 14,400 bushels of hard red spring wheat to Ballantyne, of which 9,400 bushels were to be transferred "immediately" and the remaining 5,000 bushels were to be transferred "on or before the 1st day of April, 1975". On January 16, 1975, Ballantyne's real estate agent, after having conversed with Leroy Sadler, informed Ballantyne's counsel by letter that the 14,400 bushels of wheat would not be transferred to Ballantyne until after Ballantyne had paid the 1973 and 1974 real estate taxes and had paid the past due installment payment. During August of 1975 Ballantyne received the proceeds from 9,400 bushels of wheat. However, the Sadlers did not release the remaining 5,000 bushels of wheat to Ballantyne until November 17, 1976, which date was about eight months after the Sadlers had recorded an affidavit of cancellation of the October 16, 1972, contract for deed. We conclude that the Sadlers' refusal to transfer the 14,400 bushels of wheat until Ballantyne cured the defaults under the October 16, 1972, contract for deed was inconsistent with an intent to cancel the contract and constituted a waiver of the right to cancel the contract for deed under Chapter 32–18, N.D.C.C. The trial court found that, although the Sadlers had requested authorization from Ballantyne to sell the wheat which they owed him to pay the 1973 and 1974 real estate taxes, no such authorization was granted by Ballantyne. Notwithstanding this fact, it was inconsistent with the right to cancel the contract upon Ballantyne's failure to pay the real estate taxes for the Sadlers to retain the wheat as security for the unpaid real estate taxes.

Based upon the foregoing factors, we conclude that the Sadlers waived their right to cancel the October 16, 1972, contract for deed. Accordingly, we reverse the judgment of the district court with directions to reinstate both the October 16, 1972, contract for deed and the September 20, 1974, contract for deed, on the condition that Ballantyne tender to the Sadlers the 1973

and 1974 real estate taxes, together with interest and penalty thereon, in the amount of $5,140.52, plus interest thereon from the date such taxes were paid by the Sadlers on March 23, 1976.

ERICKSTAD, C. J., and SAND and VOGEL, JJ., concur.

PEDERSON, Justice, concurring in part and dissenting in part.

Because a condition involving a forfeiture must be interpreted strictly against the party for whose benefit it is created (§ 9–01–15, NDCC), I concur in the reversal of the judgment, but I dissent from that part of the majority opinion which reinstates both the October 16, 1972, contract and the September 20, 1974, contract. I would remand for a redetermination of the issue on a contract-merger theory.

"The general rule is that where the parties enter into a written contract all prior negotiations, understandings, and verbal agreements on the same subject are merged in the written contract, and are accordingly extinguished. Also, upon the execution of a valid substituted agreement, the original agreement becomes merged into it and is extinguished." 17 Am.Jur.2d, Contracts § 483. "Ordinarily, the question as to how far a subsequent contract alters a former one is one of fact for the jury." 17 Am. Jur.2d, Contracts § 459.

"A contract may be discharged or abrogated by a new contract with the effect of altering the terms of the original or of rescinding it altogether." 17A C.J.S, Contracts § 394.

"A contract complete in itself will be conclusively presumed to supersede a prior one between the same parties and concerning the same subject matter where the terms of the two are so inconsistent that they cannot subsist together." 17A C.J.S., Contracts § 395.

In spite of the apparent agreement between Sadler and Ballantyne that there would be no merger of title nor of contract in this case, I believe that public policy requires that the courts be not prevented from determining when two contract provisions are so inconsistent that they cannot subsist together. The parties apparently ignored the nonmerger provision when they permitted offset of obligations. To require the fulfillment of each of the obligations in each of the two contracts would require idle acts (§ 31–11–05(23), NDCC). Conditions which are impossible are void (§ 9–01–14, NDCC).