Martin BELL, Appellant,

v.

Joan M. OLSON, et al., Respondents.

No. C0–88–128.

Court of Appeals of Minnesota.

June 21, 1988.

Samuel D. Goodkin, Minneapolis, for appellant.

Mark R. Anfinson, Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

Respondents Joan and Rodney Olson, the vendors in a contract for deed, issued notice of cancellation to appellant Martin Bell, the assignee of the buyers' interest in that contract. Bell brought this action for breach of contract and injunctive relief. The trial court issued a temporary restraining order, but later dissolved that order and denied Bell's request for a temporary injunction. Bell appeals.

## FACTS

Olsons acquired the commercial property at issue from the fee owners by a contract for deed which required a balloon payment in January 1988. In 1980, Olsons sold the property to Robert and Juanita Bell, appellant's brother and sister-in-law, again by contract for deed. The Olson–Bell contract provided for a balloon payment due on Jan-

uary 2, 1985, but allowed Bells to obtain an extension of up to three years by paying $700 by March 1 of each year for which extension was sought.

Olsons agreed to convey the property "by a Warranty Deed accompanied by an abstract evidencing good title * * * upon full performance" by Bells. If Bells defaulted in any of the agreements or conditions of the contract, Olsons could declare the contract cancelled, with any improvements and payments belonging to Olsons as liquidated damages.

At closing, Olsons provided an updated abstract from which it appeared that Olsons had not recorded their contract for deed from the fee owners. Although Joan Olson asserts that no title objections were raised, Robert Bell's affidavit states that she promised to record the prior contract for deed and that he also gave her the original Olson–Bell contract to record. Neither contract has been recorded.

In 1985, Bells paid for a one-year extension of the balloon payment, and in December 1985 they transferred their interest in the property to appellant Martin Bell. His complaint alleges that "shortly thereafter" he contacted Joan Olson about paying off the balance of the loan, but he produced no evidence of that contact. The first correspondence in the record is a March 16 letter in which Olson stated the outstanding balance, told Bell he would get a quit claim deed from her and an assignment of the contract for deed with the fee owner, and asked him for an assignment of the contract from the Bells so she could see how he wanted to hold title.

Bell responded by an April 25, 1986, letter requesting that she send him an updated abstract and prepare a warranty deed. He also increased his monthly payment to $1,000 to reduce the balance due. Olsons refused to provide an updated abstract, arguing that the Olson–Bell contract's provision for an abstract did not reflect their actual agreement. According to Joan Olson, who has 30 years of real estate experience, Bells agreed to the customary practice of providing an abstract at closing.

Bell continued to make the increased monthly payments and states in his complaint that in June 1987 he "offered" to pay the outstanding balance. The record contains no evidence of that offer. At some time in 1987 Bell updated the abstract at his own expense and learned that the Olsons had not recorded their contract for deed. In July 1987 the Olsons served Bell with a notice of cancellation of contract for deed for failure to make 1986 and 1987 extension payments totaling $1,400. Bell obtained a temporary restraining order barring cancellation.

The trial court denied Bell's request for a temporary injunction and dissolved the restraining order, noting without elaboration that it was consistent with custom to provide an abstract when the purchase agreement was signed and that Bells had not insisted that Olsons' contract with the fee owner be recorded. The court also pointed out that there was no evidence that Martin Bell had attempted to pay off the contract before the 1986 extension payment came due and that Bell had subsequently refused to close. The court concluded that Bell was in default for failure to make the extension payments and dissolved the restraining order. Bell appeals.

## ISSUE

Did the trial court abuse its discretion in denying Bell's request for an injunction?

## ANALYSIS

Under Minn.Stat. § 559.211 (1986), a party facing cancellation of a contract for deed may bring an action alleging affirmative defenses to termination. The statute also provides for injunctive relief subject to Minn.R.Civ.P. 65.02, which allows a temporary injunction "if by affidavit * * * it appears that sufficient grounds exist therefor." Minn.R.Civ.P. 52.01 requires courts refusing interlocutory injunctions to set forth findings of fact and conclusions of law, either in the order or in an accompanying memorandum. *See Crowley Co., Inc.*

v. *Metropolitan Airports Commission,* 394 N.W.2d 542, 544–45 (Minn.Ct.App. 1986). Those findings and conclusions do not constitute an adjudication on the merits or establish the law of the case. *Berggren v. Town of Duluth,* 304 N.W.2d 24, 26 (Minn.1981).

Five factors are considered on review: (1) nature and background of the parties; (2) harm to be suffered if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues; (3) likelihood that one party or the other will prevail on the merits; (4) public policy as expressed in the statute; and (5) administrative burdens of judicial supervision and enforcement. *Crowley,* 394 N.W. 2d at 544 (citing *Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)). In this case the nature and background of the parties do not appear significant, and the injunction would not create administrative burdens. Because the trial court relied on the merits, we address that factor first.

*1. Success on the merits.* Bell argues that his nonpayment of the extension fees was justified because of the Olsons' waiver and/or anticipatory breach of the contract. The trial court's apparent conclusion that Bell had little chance of success on the merits of those arguments was not clearly erroneous.

■ Waiver is the voluntary relinquishment of a known right, and there must be a showing of actual or implied intent to waive. *See Cohler v. Smith,* 280 Minn. 181, 189, 158 N.W.2d 574, 579 (1968). Bell produced no evidence that he attempted to pay off the balance before the 1986 extension came due, and there is no evidence of explicit waiver of that payment. The fact that Olson did not include the $700 in her April letter is not particularly probative, because that letter pertained only to the outstanding balance of the contract. Moreover, because Bell explicitly stated that his increased monthly payments were to be applied to the outstanding balance, Olsons' acceptance of those payments does not es-

top them from also insisting on the extension payments. *See Thomey v. Stewart,* 391 N.W.2d 533, 537 (Minn.Ct.App.1986) (acceptance of payments unrelated to defaults specified in notice of cancellation does not constitute waiver).

■ Bell also argues that Olsons' failure to provide an abstract and a warranty deed constituted a breach of contract which justified his refusal to make the 1987 extension payment. Bell contends that the trial court erred in relying on parol evidence that the Olsons did not have to provide an abstract, but we do not reach that issue because their failure to provide an abstract did not constitute a breach which would excuse Bell's failure to pay the extension fee.

■ The Olsons were required to provide an abstract and a warranty deed only "upon full performance" by Bell. It appears that Bell never tendered full payment, and his offer to pay was conditioned on the Olsons' first providing the abstract. Without first tendering performance, a party cannot justify nonperformance by the other party's failure to perform. *See* 3A *Corbin on Contracts* § 663 (1960). That principle applies with particular force here, because Olsons' performance was expressly conditioned upon full performance by Bell. *See* 3A *Corbin on Contracts* § 657 (1960) ("The duty to render the earlier performance can not be made conditional on tender of the return performance without changing the terms on which the parties have agreed.").

Bell attempts to avoid this result by arguing that Olsons' failure to record their deed or provide an abstract constitutes a "clear case" of anticipatory breach of contract. Anticipatory breach may be found only upon

> a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.

4 *Corbin on Contracts* § 973 (1951). No such unequivocal repudiation of the entire contract appears in the record.

■■ In the absence of express unqualified repudiation, inability to perform may constitute anticipatory breach. *See Space Center, Inc. v. 451 Corp.,* 298 N.W.2d 443, 450–51 (Minn.1980). However, the record does not show that the Olsons' failure to record would preclude them from giving good title to Bell upon his full performance. *Compare id.* at 450 (irrevocable loss of title constitutes anticipatory breach).

■ Even if the Olsons' refusal to provide an abstract constituted an anticipatory breach, that breach would not justify Bell's nonperformance. Renunciation of only part of a contractual duty is not a breach unless that duty is so essential that its nonperformance would frustrate the purpose of the contract. *See 4 Corbin on Contracts* § 973 (1951). Every fully executed warranty deed constitutes a covenant by the grantor that he is "lawfully seized of the premises in fee simple and has good right to convey the same; [and] that the premises are free from all encumbrances." Minn.Stat. § 507.07 (1986). The grantor also promises to defend title against other claimants. *Id.* Because Olsons have offered to provide a warranty deed, their failure to provide an abstract or record their contract for deed would not frustrate the purpose of the agreement.

In summary, the failure to provide an abstract did not justify Bell's refusal to perform an unrelated condition of the agreement. Bell could have paid the extension fee or tendered full payment before the extension came due and brought an action if the Olsons failed to provide a warranty deed. The trial court did not clearly err in finding that Bell had little chance of success on the merits of his asserted justifications for nonperformance and did not abuse its discretion in denying an injunction on that basis.

■ *2. Balance of harm.* Since this litigation commenced, the Olsons have had to pay off the balloon on their contract for deed without receiving the balloon on the Olson–Bell contract. An injunction would tie up those funds indefinitely pending trial on the merits.

By contrast, Bell stands to lose only the amount of the extension fee if the injunction is denied, although he would have to pay that amount to avoid cancellation and retain his claims for breach of contract, which would not survive cancellation. *Nowicki v. Benson Properties,* 402 N.W.2d 205, 208 (Minn.Ct.App.1987). However, the harm to Bell from paying the fees is not irreparable, and he has an adequate remedy at law. *See Lindberg v. Gebo,* 381 N.W.2d 905, 907 (Minn.Ct.App.1986). Bell does not assert that he lacks the financial resources to make the extension payments to avoid cancellation, and if he prevails in his breach of contract action, he can recover the payments as damages. Given the availability of an adequate legal remedy, Bell has not shown irreparable injury that would outweigh the harm to Olsons if the injunction were granted.

*3. Statutory policy.* At common law, the vendor could declare a forfeiture upon a breach by the buyer without giving the buyer an opportunity to cure the default. *See Kosbau v. Dress,* 400 N.W.2d 106, 109 (Minn.Ct.App.1987). The purpose of Minn. Stat. § 559.21 is to ameliorate that rule by providing the purchaser with notice and an opportunity to cure. The injunction provision of Minn.Stat. § 559.211 allows for relief if a purchaser has a meritorious defense, but lacks the resources to cure default and would therefore lose his contract claim unless an injunction issued. Because the statute refers to Rule 65, an injunction is not required in the absence of irreparable injury and an inadequate legal remedy.

Because we conclude, upon review of the relevant factors, that the denial of an injunction was not an abuse of discretion, we do not decide whether Bell is entitled to recover his abstract expense, or whether the liquidated damages provision is unenforceable. If Bell cures his default, tenders performance and maintains his action for breach of contract, these issues will be decided at trial or rendered moot.

DECISION

Affirmed.