# BORGERDING INVESTMENT COMPANY v. CLINTON D. LARSON AND ANOTHER.

170 N. W. (2d) 322.

August 22, 1969—No. 41079.

*Hulstrand, Langsjoen & Anderson* and *Leif R. Langsjoen,* for appellant.

*Willette, Zeug & Kraft* and *James E. Zeug,* for respondents.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Plaintiff, Borgerding Investment Company, appeals from a judgment entered following trial of consolidated actions against defendants, Clinton D. Larson and Betty Lou Larson. One action was brought to recover a balance due on a promissory note; the other sought a judgment determining that the Larsons had no right, title, or interest in the farm hereinafter described.

Since plaintiff has not attacked the trial court's findings of fact, the only issue with which this court will concern itself on this appeal is whether the trial court's findings of fact sustain the conclusions of law and judgment. Liebsch v. Abbott, 265 Minn. 447, 122 N. W. (2d) 578.

The facts as found by the trial court are as follows: On October 30, 1958, a contract for deed was entered into between

Monica Kramer and Lawrence Kramer as vendors and defendants as vendees. The contract involved the sale of a half-section farm in Renville County, Minnesota, described as:

"The South Half of Section 20, Township 116 North of Range 32 West of the Fifth Principal Meridian, subject to Highway * * *."

The contract was filed in the office of the register of deeds of Renville County on December 6, 1962, and recorded in Book No. 13 of Deeds, p. 501.

The purchase price was $60,800, $4,000 of which was paid upon execution of the contract, and $5,000 on March 1, 1959. The balance was payable in annual installments of $2,000 on the principal, plus interest, up to 1970, when the unpaid balance became due. By March 1, 1963, defendant-vendees had paid $17,000 on the principal and had also paid interest and taxes. Thereafter they defaulted and have made no further payment.

Prior to November 12, 1962, defendants had borrowed money from the North American State Bank of Belgrade and executed several promissory notes for the loans. On November 12, 1962, the amount due on principal and interest on the loans was $11,972.48. The Larsons executed a new note for $12,000 on November 12, 1962, bearing interest at the rate of 8 percent per annum. The sum for which the new note was given was computed by adding to the amount due on the several notes the sum of $1,200 for taxes and some fees of $50, and by subtracting therefrom a note of $1,900. This made a balance of $11,322.48. The difference between this amount and the $12,000, for which the note was given, was $677.52, which the bank paid to the Larsons in cash.

H. G. Borgerding was president of the North American State Bank of Belgrade at the times here involved. He was also secretary of the Borgerding Investment Company, the plaintiff herein. This company is a family investment firm, having its office and principal place of business in the North American State

Bank Building. The record discloses no evidence as to whether there is any indication within the bank building of a separate entity. The $12,000 note was made payable to the Borgerding Investment Company, knowledge of which came to the Larsons at a later date. H. G. Borgerding handled the transaction and there is no evidence in the record as to whether he acted in his capacity as an officer of the bank or as an officer of the investment company, except that the note was on the bank's form but the name of the bank was stricken out and "Borgerding Investment Company" was typed in.

The investment company paid the Larsons' indebtedness to the bank. The contract for deed hereinbefore described was given as security for the $12,000 note. This was accomplished by a standard form of assignment of the contract for deed by the Larsons to the plaintiff, reciting a consideration of $12,000 for said assignment. The assignment was filed in the office of the register of deeds on December 6, 1962, and recorded in Book No. 13 of Deeds, p. 503. At the time of the assignment, there was also executed a collateral security agreement. This agreement recited the execution of the note and the assignment of the contract as security and provided that in case of default, or when plaintiff deemed itself insecure, it could sell its security at public or private sale. This agreement also provided that if defendants failed to pay the payments required by the contract for deed plaintiff could make such payments and add said amount to the unpaid balance due. The Larsons thereafter paid $3,000 on the principal of the note on December 5, 1962, and $1,000 on interest November 2, 1964. No other payments have been made on the note.

On April 18, 1965, plaintiff secured from the vendors (the Kramers) an option to buy the farm if they canceled the contract. Under the option plaintiff was to pay the amount due on the contract, plus cancellation expenses and fees. On May 8, 1965, notice of cancellation of contract was served upon the Larsons, who failed to pay the amount in default. The notice of cancellation,

proof of service, and affidavit of failure to comply have never been filed for record. However, on June 16, 1965, a contract for deed was entered into between the Kramers as vendors and plaintiff as vendee covering the farm. The consideration for the contract executed on that date was $42,988.17, which was the amount due on the contract between the Kramers and defendants, interest thereon, and costs of cancellation. In addition thereto plaintiff assumed the payment of any delinquent taxes. This contract for deed to plaintiff has never been recorded. The purpose of this contract, the trial court found, was to preserve plaintiff's security.

The Larsons remained in physical possession of the farm until January 10, 1965, at which time they removed from it. On or about June 17, 1965, plaintiff took possession of the farm by a tenant. This situation continued up to the time of trial on March 8, 1967.

At the time plaintiff secured the contract for deed from the Kramers, the Larsons had paid $17,000 on the purchase price of the farm. At this time the farm was worth $64,000, so that the actual equity of the Larsons in the farm was approximately $20,000.

The court's final finding of fact was that the assignment of the vendee's interest in the contract for deed to plaintiff constituted an equitable mortgage to secure the original indebtedness of $12,000; that no proceedings have been had to foreclose the equitable mortgage; and that the Larsons have not lost their right to redeem.

The trial court's conclusions of law were:

"That the plaintiff recover judgment against the defendants in the sum of $9,000.00, together with interest in the sum of $2,331.41, making a total of $11,331.41.

"That the vendee's interest in the contract for deed describing the following real estate in the County of Renville, State of Minnesota, to-wit:

"The South Half of Section 20, Township 116 North of Range

32 West of the Fifth Principal Meridian, subject to Highway, in which contract Monica Kramer and Lawrence Kramer, wife and husband, are the vendors and the plaintiff is the vendee, dated June 16, 1965, is a security interest only.

"That the defendants are the owners of the vendee's interest in said contract for deed, subject

"(a) to the equitable mortgage in favor of the plaintiff to secure the indebtedness of the defendants to the plaintiff in the sum of $11,331.41,

"(b)  to an accounting of all payments of principal, interest, taxes and other expenses paid by the plaintiff in connection with said contract for deed, and

"(c)  to an accounting of the rents and profits received by the plaintiff from said farm since June 17, 1965.

"That the plaintiff has no right, title, interest or lien in said real estate, except as above provided.

"The Court reserves jurisdiction herein to hear the accounting upon application being made therefor."

■ We think the evidence clearly shows, as stated by the trial court in a memorandum accompanying its findings of fact, conclusions of law, and order for judgment, that acquisition by plaintiff of the option and the subsequent contract for deed was intended to preserve its security. It is clear also that defendants assigned their interest in the contract for deed of October 30, 1958, as security for the $12,000 loan from plaintiff.

The trial court, which heard all the testimony and observed all the witnesses, concluded its memorandum by saying:

"The plaintiff's conduct and position is unconscionable. It not only wants the defendants' equity in the farm, worth approximately $20,000.00, but it also wants to have defendants pay the balance of $11,000.00 upon the note which was secured by the defendants' equity in the farm. It is significant that the plaintiff secured an option for contract for deed 23 days before any cancellation of contract proceedings were initiated."

After due and careful consideration of the record herein, we are unable to reach any other conclusion but that plaintiff had a security interest in the Larsons' contract for deed and that as a result plaintiff stands as an equitable mortgagee.

■■■ We think it clear from a long line of decisions in this state that the contract-vendee-mortgagor's equity of redemption cannot be destroyed upon the mortgagee's acquisition of the legal title from the contract vendor when the mortgagee has obtained the legal title to protect the security interest, as the right of redemption is inherent in every transaction which is intended as security for money. In Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369, this court held that a second or further conveyance, growing out of a prior mortgage, or taken in virtue of that relation, cannot be set up to bar a redemption. It was also held in the Niggeler case (34 Minn. 119, 24 N. W. 369):

"A mortgagee in this state, whatever the form of the instrument creating the security, has before foreclosure a lien only, and is not invested with the legal title; hence the mortgagor's interest can only be divested by a release properly executed, unless the circumstances are such as to constitute an equitable bar or estoppel.

"* * * Any arrangement between the parties under which the creditor secures the property for himself at less than its value, through an advantage which his position as mortgagee enables him to take of the necessities of the mortgagor, is liable to be set aside or adjudged void."

In Marshall v. Thompson, 39 Minn. 137, 140, 39 N. W. 309, 311, this court said:

"Though a mortgagee may purchase the equity of redemption, yet where the relation of mortgagor and mortgagee is once established, the courts scrutinize with great jealousy the acquisition of the equity of redemption by the mortgagee in any other way than by regular foreclosure. Niggeler v. Maurin, 34 Minn. 118, (24 N. W. Rep. 369.) And additional conveyances exacted

or secured by the mortgagee for his benefit cannot be used to prevent a redemption. They 'proceed from the same old root, and are subject to the same equity; otherwise hardship and oppression might be practised upon the mortgagor.' Holdridge v. Gillespie, 2 John. Ch. 33. The rule is inflexible, *'once a mortgage, always a mortgage.'* Nor is it material that the note or personal obligation evidencing the debt is surrendered or cancelled, the debt remaining in fact unpaid." (Italics supplied in part.)

The form of the instrument by which plaintiff obtained its additional security is not controlling. We have held that "[e]quity's vision is not circumscribed by formal instruments, but extends through matters of form to the heart of the transaction." Holien v. Slee, 120 Minn. 261, 267, 139 N. W. 493, 495. Clearly, the fact that the investment company cloaked its security transaction in the form of a new contract for deed does not change the nature of the transaction.

■ The record discloses that plaintiff was never served with notice of cancellation of the Larson contract for deed as required under Minn. St. 559.21. See, Stannard v. Marboe, 159 Minn. 119, 198 N. W. 127. Thus, the Kramers never terminated plaintiff's security interest in the Larson contract. Furthermore, plaintiff had, prior to the service of the notice of cancellation on the Larsons, obtained the option to protect its security interest. Plaintiff claims that the contract for deed between the Kramers and plaintiff was a purchase of the farm. This contention, however, is not supported by the evidence. Plaintiff through its own witness testified it was purchasing the vendors' interest to protect its security on the promissory note. H. G. Borgerding in answer to certain questions stated:

"Q. Well, had you indicated to Mr. Lamm and the Kramers that you had a security interest in this Hector farm?

"A. They realize that.

"The Court: Just answer the question. The court reporter will repeat it.

"(Previous question was read by the court reporter.)

"Yes.

"Q. (By Mr. Zeug [defendants' counsel]) And did you indicate to Mr. Lamm or to the Kramers that you wanted to protect your security in this farm?

"A. Yes."

The testimony of the vendors also indicates that the new contract for deed was to protect the security of the Borgerding Investment Company on the Larson note. Mrs. Kramer testified as follows:

"Q. Can you relate what conversation you had with Mr. Sullivan and Mr. Borgerding at that time?

"A. Well, they just came out and said that they had this money that they had lent Larsons, and they would like to get their money out, and if I would foreclose to let them know, but they also said, 'For goodness sakes, we wish you wouldn't foreclose right away.', is what they said."

Mr. Kramer stated as follows:

"Q. And what transpired at that time?

"A. Well, he [Borgerding] came down, and he told us there that Mr. Larson was in trouble and had money borrowed at the bank and that if we ever intended to foreclose that we should let him know.

"Q. Did he say why?

"A. Well, he said that they had to have some security and that was the only way they thought they could get their money."

In O'Connor v. Schwan, 190 Minn. 177, 180, 251 N. W. 180, 181, this court stated:

"* * * From the early case of Niggeler v. Maurin, 34 Minn. 118, 124, 24 N. W. 369, 372, down to the present time, this court has expressed a steadfast determination to see that the transaction by which the mortgagor parts with his equity of redemption is untainted by oppression or overreaching."

The collateral security agreement between plaintiff and the Larsons provided that defendants agreed "to make all payments of interest and principal on said contract for deed," and that if they failed to do so, plaintiff could make such payments and add said amount to the unpaid balance due plaintiff from defendants.

Clearly, the original security agreement stated the rights, duties, and obligations of the parties. Plaintiff cannot by changing the form of the transaction cause a forfeiture of the Larsons' right of redemption. The forfeiture of the right of redemption is not favored in law or equity. Jandric v. Skahen, 235 Minn. 256, 50 N. W. (2d) 625.

■ In Schnitter v. Lau (8 Cir.) 189 F. 893, the court held that the vendee-mortgagor's equity of redemption in Minnesota is not forfeited by the mortgagee's acquisition of the vendor's legal title, and that the mortgagee is required to foreclose pursuant to statute. In Hewitt v. Baker, 222 Minn. 292, 24 N. W. (2d) 47, this court held that a deed absolute in form but originally intended by the parties as security merely is regarded in equity as a mortgage. See, also, 12 Dunnell, Dig. (3 ed.) § 6154.

Since the evidence clearly sustains the court's finding that plaintiff received the assignment of defendants' interest in their contract for deed solely as security, defendants' equity of redemption can be terminated only by foreclosure and sale. The trial court's decision must be affirmed.

Affirmed.