**Haroon KARIM, et al., Appellants,**

v.

**Richard G. WERNER, et al., Respondents.**

**No. C5–81–1123.**

Supreme Court of Minnesota.

May 27, 1983.

Thomas E. Sanner and Terence J. McCloskey, Johnson, Sands, Lizee, Fricker & McCloskey, Minneapolis, for appellants.

Jerrold M. Hartke, Hartke, Atkins & Montpettit, So. St. Paul, for respondents.

PETERSON, Justice.

Haroon and Latiefa Karim (plaintiffs) appeal from an order for judgment adjudging plaintiffs in breach of a contract for deed (C/D–1) with Richard and Kathleen Werner (defendants). Plaintiffs are vendees in the contract for deed; defendants are vendors. We affirm.

In 1975, plaintiffs purchased commercial investment property (known as Newport Plaza) on a contract for deed basis from Wil-Mur Enterprises, Inc. (Wil-Mur). Wil-Mur assigned its vendor's interest to defendant. Both plaintiffs and defendants were experienced and sophisticated in real estate investment.

In April 1978, plaintiffs sold Newport Plaza to Jeffrey Dziuk by a separate contract for deed (C/D–2). Plaintiffs obtained no consent from defendants for the sale and continued payments on the original contract for deed, C/D–1. Dziuk notified defendants of the sale in July 1978, and took over the existing leases on the property. Defendants served plaintiffs with a cancellation notice on March 1, 1979, citing the breach of the "due-on-sale" clause of C/D–1 as cause for the notice. Plaintiffs responded with the present action, seeking to enjoin defendants from proceeding with cancellation. The trial court determined that the cancellation notice was effective, and that the due-on-sale clause had been breached.

■ Plaintiffs initially concede that the due-on-sale clause does not work an unreasonable restraint on alienation of property. This view comports with *Holiday Acres No. 3 v. Midwest Federal Savings & Loan Ass'n of Minneapolis,* 308 N.W.2d 471 (Minn. 1981),[1] where we held that a due-on-sale clause contained in a mortgage agreement did not constitute an unlawful restraint upon the alienation of the residential investment property at issue. Since the prop-erty at issue in the present case is commercial investment property and no inequities were proved in the bargaining process leading to the contract for deed, we have no difficulty in enforcing the due-on-sale clause, if the transaction under review falls within its ambit.

■ To analyze the due-on-sale clause of C/D–1, we begin with the language of the clause:

> Parties of the second part [plaintiffs] shall not transfer, sell or assign their interest in the Contract for Deed to be executed between the parties without prior written consent of party of the first part [defendants]. Any transfer in violation of this provision shall be cause for immediate acceleration of the then remaining balance.

Plaintiffs essentially argue that—for the clause to be enforceable—they would have had to sell their *entire* interest in the contract for deed, that is, to sell the contract. Plaintiffs did not sell, assign, or transfer C/D–1 to Dziuk; rather, they entered into a new contract for deed, C/D–2, with Dziuk, a contract containing different terms and obligations than those contained in C/D–1 entered into between plaintiffs and defendants. Plaintiffs kept C/D–1, continuing payments and retaining certain obligations. They suggest the transaction does not invoke the clause.

We do not read the due-on-sale clause so strictly, recognizing that an interest in a piece of real estate is a "bundle of rights we know as property." *Holiday Acres No. 3,* 308 N.W.2d at 481. When plaintiffs signed C/D–2 with Dziuk, they sold a major portion of their interest in Newport Plaza, which was represented by C/D–1. To be sure, plaintiffs retained some rights by keeping C/D–1, such as the right to compel delivery of legal title to them upon comple-

---

1. We recognize that the Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, § 341(b)(1) (1982), pre-empts Minnesota law to the contrary for mortgages entered into before October 15, 1982, where Minnesota law did not at the time the mortgage was en-tered into prohibit enforcement of due-on-sale clauses. We need not consider the impact of the Garn Act in this case, however, given our finding that the due-on-sale clause is enforceable.

tion of the obligations of C/D–1. *Karalis v. Agnew,* 111 Minn. 522, 127 N.W. 440 (1910). But plaintiffs promised Dziuk to convey their title to him upon completion of C/D–2.

█ In the course of good faith performance by all parties involved in the real estate, Dziuk has the major interest in Newport Plaza, the major bundle of rights. Rather than insert words—like *entire*—into the due-on-sale clause at plaintiffs' discretion, we think that the intent of the due-on-sale clause is quite clear and that it was inserted in C/D–1 to prevent, without defendants' consent, the transaction that took place: a sale of a contract for deed on a contract for deed. As has been often stated, the role of judicial interpretation is to ascertain and give effect to the parties' intention. *Morrison v. St. Paul & Northern Pacific Railway Co.,* 63 Minn. 75, 77, 65 N.W. 141, 141–42 (1895). Enforcing the due-on-sale clause in C/D–1, we believe, best effectuates the intentions of the parties in drafting the clause.

█ One minor issue remains to be resolved. The cancellation notice sent to plaintiffs stated that attorney fees in the amount of $200 were due as a result of the notice. This misstated the amount statutorily allowed as attorney fees by $100. Minn.Stat. § 559.21, subd. 1a (1982). Plaintiffs contend that this error rendered the cancellation notice ineffective for cancellation proceedings pursuant to that notice. We decline to hold that such misstatements render cancellation notices fatally defective. Such a misstatement does not compare with a misstatement of the statutory redemption period, which is an error of different magnitude, and renders a cancellation notice ineffective. *Tarpy v. Nowicki,* 286 Minn. 257, 175 N.W.2d 443 (1970).

Affirmed.