**BANK MIDWEST, MINNESOTA, IOWA, N.A., Appellant,**

v.

**Jerome LIPETZKY, et al., Respondents,**

**James Lipetzky, et al., Respondents.**

No. C1–02–1747.

Court of Appeals of Minnesota.

May 20, 2003.

Michael S. Dove, Peter D. Favorite, Gislason & Hunter LLP, New Ulm, for appellant.

John H. Schnobrich, Jennifer L.J. Gilk, Estebo, Schnobrich, Frank & Gilk, Ltd., Redwood Falls, for respondents Jerome Lipetzky, et al.

Thomas W. Van Hon, Fairfax, for respondents James Lipetzky, et al.

Considered and decided by HARTEN, Presiding Judge, SCHUMACHER, Judge, and MINGE, Judge.

## OPINION

HARTEN, Judge.

The district court granted summary judgment canceling a contract for deed between respondents, vendors and vendees of farmland, after determining that the contract for deed provisions voided both the assignment of the contract for deed and the mortgage on the farmland securing the vendees' debts to appellant, a bank. The district court also determined that appellant bank was not entitled to an equitable mortgage on the property. Because we conclude that the assignment of the contract for deed is precluded, we affirm on that issue; because we conclude that mortgage is not precluded, we reverse and remand that issue for proceedings not inconsistent with this opinion.[1]

1. Because we determine that the mortgage is not void, the equitable mortgage issue is moot and we do not address it.

## FACTS

In 1993, respondents Jerome and Marion Lipetzky, owners of farmland, entered into a contract for deed with their son, James Lipetzky, and his wife, Tamara Lipetzky, by which they conveyed farmland for $72,000, a sum less than its market value.[2] Jerome Lipetzky added to the contract for deed a clause providing, "Buyer agrees they [sic] cannot sell, transfer or assign this property without written permission or consent of the seller."

In 1997 and 1998, James and Tamara Lipetzky secured their indebtedness to appellant Bank Midwest, Minnesota, Iowa, N.A., by mortgaging their contract vendees' interest in the property, first for $110,000, then for $215,000 (collectively, the mortgage). In 1998, they also executed an assignment of the contract for deed to appellant. Jerome and Marion Lipetzky were not initially aware of the mortgages or the assignment, but learned of those transactions in March 2001, when appellant commenced a mortgage foreclosure action. They then served James and Tamara Lipetzky and appellant with a notice of cancellation of contract for deed. Appellant obtained a temporary injunction to halt the cancellation proceedings. In April 2001, James and Tamara Lipetzky filed for bankruptcy.

Appellant brought the instant action against Jerome, Marion, James, and Tamara Lipetzky, seeking an injunction to halt the cancellation of the contract for deed and a declaratory judgment that the mortgage and the assignment of the contract for deed were valid and enforceable, or, in the alternative, that appellant had an equitable mortgage on the property. Appellant moved for summary judgment; Jerome and Marion Lipetzky filed a cross-motion for summary judgment.

Following a hearing, the district court denied appellant's motion and granted Jerome and Marion Lipetzky's motion. Appellant challenges the summary judgment.

## ISSUES

1. Is a contract for deed provision that a vendee cannot sell, transfer, or assign the property without the written permission or consent of the vendor ambiguous?

2. Does a contract for deed provision that a vendee cannot sell, transfer, or assign the property without the written permission or consent of the vendor void the vendee's assignment of the contract for deed absent the written permission or consent of the vendor?

3. Does a contract for deed provision that a vendee cannot sell, transfer, or assign the property without the written permission or consent of the vendor void the vendee's mortgage of the property absent the written permission or consent of the vendor?

## ANALYSIS

### 1. Ambiguity

▆▆▆ We first address whether the contract for deed clause providing that "Buyer agrees they cannot sell, transfer or assign this property without written permission or consent of the seller" is ambiguous. Whether contract language is ambiguous (reasonably susceptible to more than one construction) presents a question of law, on which the reviewing court owes no deference to the district court's determination. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643–44 (Minn.

**2.** Although the trustees of various revocable trusts are also listed as respondents, they took no part in the events giving rise to this action.

App.1985), *review denied* (Minn. 24 June 1985).

■ We conclude that the phrase at issue here, "sell, transfer, or assign," is not ambiguous. "The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." *Bd. of Regents v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn.1994). In the context of real property, "sell," "transfer," and "assign" have clear and distinct meanings. We agree with the district court that the phrase is unambiguous and turn to the narrow issues presented to us: whether the phrase precluded assigning and whether it precluded mortgaging.

**2. Assignment**

■ We conclude that the contract for deed phrase, "cannot sell, transfer or assign," precludes assignment and that James and Tamara Lipetzky breached the contract for deed by assigning it to appellant. Appellant argues that, because the assignment was "for security purposes," it was not precluded. But the contract for deed did not exempt assignments made for security purposes; it provided only that "Buyer * * * cannot sell, transfer, or assign this property * * *." Appellant relies on *Midtaune v. Burns*, 434 N.W.2d 474, 476–77 (Minn.App.1989) (holding that, when contract for deed vendees make an assignment for security purposes, they are entitled to reassignment if they satisfy the obligation secured by the contract, and that the assignee does not assume the

vendee's debt), *review denied* (Minn. 29 Mar. 1989). But *Midtaune* is distinguishable: there is no evidence that the contract for deed in that case prohibited the vendee from assigning.[3] We agree with the district court that the assignment to appellant is precluded and unenforceable.

**3. Mortgage**

■ We disagree with the district court's determination that "sell, transfer, or assign" also means "mortgage." The district court found that, because the mortgage documents read "Grantor mortgages and conveys to Lender" and " 'convey' is synonymous with 'transfer' [Black's Law Dictionary 334 (7th ed.1999)]," the prohibition against transferring is actually a prohibition against mortgaging. But this finding ignores Minn.Stat. § 559.17, subd. 1 (2002), providing that:

> A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure * * *.[4]

Boilerplate language on a mortgage document cannot override an explicit statutory provision. "Conveyance," within the meaning of this statute, would encompass a sale, a transfer, or an assignment: neither a buyer, nor a transferee, nor an assignee undertakes a foreclosure sale to acquire possession of the property. A mortgage, however, does require a foreclosure sale for the mortgagee to take possession. Mortgaging is thus distinct from selling, transferring or assigning.

**3.** Other cases involving vendees' assignments of contract for deed are similarly distinguishable. *See, e.g., Borgerding Inv. Co. v. Larson*, 284 Minn. 371, 170 N.W.2d 322 (1969); *Cohler v. Smith*, 280 Minn. 181, 158 N.W.2d 574 (1968); *Proulx v. Hirsch Bros. Inc.*, 279 Minn. 157, 155 N.W.2d 907 (1968).

**4.** Appellant does not cite the modern statute but relies instead on a case construing the

same language: *Gardner v. W.M. Prindle & Co.*, 185 Minn. 147, 148–49, 240 N.W. 351, 352 (1932) (construing section 9572, Mason's Minn. St. 1927, "providing that 'a mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure.' ").

Moreover, the expression of a series of items is generally construed to be the exclusion of other items.[5] Expressing "sell, transfer, or assign" implies an intent to exclude "mortgage," not to include it. The phrase "cannot sell, transfer, or assign" is not ambiguous and does not mean "cannot mortgage." Accordingly, appellant's mortgage is not invalidated by the language of the contract for deed.[6]

James and Tamara Lipetzky secured their debt to appellant by giving appellant a valid mortgage on their interests as contract for deed vendees. The mortgage did not breach and is not voided by the contract for deed.

## DECISION

We affirm the district court's findings that the contract for deed was not ambiguous and that its language precluded the vendees from assigning the property at issue. We reverse, however, the district court's finding that the mortgage was voided by the contract for deed and its judgment canceling the contract for deed and remand for further proceedings not inconsistent with this opinion.[7]

**Affirmed in part, reversed in part and remanded.**

MINGE, Judge, dissenting.

I respectfully dissent.

The issue in this case is the application of the following clause to a mortgage:

Buyers * * * cannot sell, transfer or assign this property without written permission or consent of the seller.

5. "[E]xpressio unius est exclusio alterius * * *. A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 602 (7th ed.1999).

6. Were the case not in a summary judgment context, the evidence would likely lead to the same result. "The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered." *City of Virginia v. Northland Office Prop. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn.App. 1991), *review denied* (Minn. 18 Apr. 1991). The role of judicial interpretation of a contract is to ascertain and give effect to the parties' intention. *Karim v. Werner*, 333 N.W.2d 877, 879 (Minn.1983). The district court implicitly ascertained that the parties to the contract for deed intended that James and Tamara Lipetzky would be unable to mortgage the property without the consent of Jerome and Marion Lipetzky. But the extrinsic evidence, in the form of the parties' deposition testimony, does not support that view of the parties' intent. James Lipetzky testified that he did not recall any language that would prevent him from mortgaging the property without Jerome and Marion Lipetzky's consent; Tamara Lipetzky testified that she was not aware that she and James Lipetzky were

not free to mortgage the property without the consent of Jerome and Marion Lipetzky, and Marion Lipetzky testified that James and Tamara Lipetzky "probably didn't realize" they needed permission before mortgaging the property. Only Jerome Lipetzky, at whose direction the clause was drafted, testified that he intended the clause to prohibit mortgaging the property, and his testimony is not convincing: he failed to explain why a clause intended to preclude mortgaging did not include the word "mortgage." Moreover, contract language is construed against the drafter. *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 917 (Minn.1990). Jerome Lipetzky's view that the clause precluded the mortgaging of the property without his consent is not dispositive.

7. We decide only that the assignment of the contract for deed is invalid and unenforceable and that the mortgage was not precluded by the contract for deed language at issue. We express no opinion on the prudence of the parties, or any of them, in undertaking this transaction in the manner indicated by the evidence, and we do not speculate on the parties' future positions that may or may not result from our holding.

Appellant bank asserts this does not apply to the mortgage; respondent sellers assert it does.

Minnesota law defines the word "transfer" as follows:

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and *creation of a lien or other encumbrance.*

Minn.Stat. § 513.41(12) (2002) (emphasis added). Although this definition is provided in the context of fraudulent transfers, it is consistent with the dictionary definition, makes sense and, in the absence of any other statutory definition, should be used in this context. The *Black's Law Dictionary* defines the word "transfer" as follows:

Any mode of disposing of or parting with an asset or an interest in an asset, including the payment of money, release, lease, *or creation of a lien or other encumbrance.* * * * The term embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or with an interest in property, *including retention of title as a security interest and foreclosure of the debtor's equity of redemption.*

*Black's Law Dictionary,* 1503 (7th ed.1999) (emphasis added.)

This definition squares with logic. The ownership of real estate includes a bundle of rights. An instrument need not give all of these rights or even possession to be a "transfer." Given the powerful and extensive property interest that is inherent in a mortgage, it is certainly a transfer of an interest in property. To be sure, it has a conditional character. However, upon default and foreclosure, the mortgagee can terminate the mortgagor's right to posses-

sion. The very existence of the mortgage prevents conveyance of clear title.

It is noteworthy that a mortgage is functionally almost indistinguishable from the conditional assignment that was also executed by the purchasers. Assignments are precluded by the restriction in the contract for deed and the conditional assignment in this case has been set aside by the majority. This is indeed a fine line between an assignment for security and a mortgage.

This case illustrates a further dimension of the problem. The appellant is not merely holding a tentative or speculative interest in the land. The mortgage is in default and the appellant mortgagee has initiated foreclosure. This is a step towards obtaining all the mortgagor's right, title and interest, which in this case includes the right to possession. We should not ignore the fact that a sheriff's foreclosure sale is the logical outcome of this process. The sheriff's certificate of sale would certainly be a "transfer" within the meaning of the restriction in the contract for deed in this case. That being the case, the mortgage, which is the basis for the foreclosure, is part and parcel of a transfer. We only postpone the inevitable.

I submit the majority's reliance on Minn.Stat. § 559.17 (2002) is misplaced. First the language in the document in question does not use the word "convey" or "conveyance." It uses the word "transfer." Second, although § 559.17 contains the language quoted by the majority, it only establishes that for mortgage purposes Minnesota is a lien state. The statute reads:

a mortgage of real property is not to be deemed a conveyance, *so as to enable the owner of the mortgage to recover possession* * * * *without a foreclosure* * * *.

*Id.* (emphasis added). It does not say that a mortgage is not otherwise a conveyance or that *no* interest is transferred or conveyed. *Id.* This statute would be relevant if the dispute were over the bank's effort to obtain possession without foreclosure. However, no one is contending that there is any dispute over the right of possession in this appeal. It is ironic that a statute, that was designed to protect debtor's rights, in this case saves the lien on the creditor's mortgage.

This narrow view of § 559.17 is confirmed by the fact that neither the parties nor the district court cited or discussed the section. Rarely does this court consider a legal argument much less decide a case on a legal argument the parties did not raise either with the district court or on appeal. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988).

I would affirm the district court's decision. However, given the difference between the district court and the outcome on this appeal, one is forced to consider the question of ambiguity. Before reversing, I would remand this case for a trial on the question of how the parties' intentions affect the meaning of the contract for deed restriction that the purchasers (son and daughter-in-law) not "sell, transfer or assign" without the written consent of the sellers (parents). The record indicates that the price being paid for the land under the contract for deed was substantially less than its market value. The parents clearly wished to keep the family farm in the family. Mortgaging the property to a lender for a pre-existing debt appears to be as inconsistent with this intent as selling the property to a neighbor.