BANK MIDWEST, MINNESOTA,
IOWA, N.A., Respondent,

v.

Jerome LIPETZKY, et al., Appellants,

James Lipetzky, et al., Respondents.

No. C1–02–1747.

Supreme Court of Minnesota.

Jan. 15, 2004.

Michael S. Dove, Peter D. Favorite, Gis-
lason & Hunter LLP, New Ulm, MN, for

Respondent Bank Midwest, Minnesota,
Iowa, N.A.

Thomas W. Van Hon, Fairfax, MN, for
Respondent James Lipetzky, et al.

John H. Schnobrich, Jennifer L.J. Gilk,
Redwood Falls, MN, for Appellant Jerome
Lipetzky, et al.

## OPINION

HANSON, Justice.

The question presented in this appeal is whether the grant of a mortgage by a contract for deed vendee without the consent of the contract for deed vendor is a breach of a consent clause that provides "Buyer agrees they cannot sell, transfer or assign this property without written permission or consent of seller." The district court concluded that it is, but the court of appeals disagreed, holding that the grant of a mortgage is not a "transfer." We reverse the court of appeals and reinstate the decision of the district court.

On November 9, 1993, James and Tamara Lipetzky [1] entered into a contract for deed with James' parents, Jerome and Marion Lipetzky, for the purchase of a portion of the family farm located in Redwood County, Minnesota. The farm had been in Jerome's family for over 80 years. The contract provided a purchase price of $72,000, which was less than half of the Assessor's Estimated Market Value of $184,300. The contract contained the consent clause quoted above.

In January 1994, Jerome and Marion conveyed fee title to the property and their vendor's interests in the contract for deed to their respective revocable trusts, the

---

1. This case involves several members of the Lipetzky family. After initial introduction, members of the Lipetzky family will be referred to by their first names.

trustees of which have joined as appellants in this proceeding (hereinafter referred to collectively as the "Trusts.").

Almost 4 years after they acquired their vendees' interests, James and Tamara granted a mortgage on those interests to respondent Bank Midwest[2] in the amount of $110,000. Eighteen months later, they granted a substitute mortgage in the increased amount of $215,000. At the time of the substitute mortgage, James and Tamara also assigned their rights in the contract for deed to the Bank as additional security. James and Tamara did not obtain written consent from Jerome and Marion or their Trusts for any of these transactions.[3] At the time of the substituted mortgage and assignment, James and Tamara were still subject to a prepayment restriction in the contract for deed that precluded prepayment "for the first seven (7) years of the contract without the written consent of the seller."[4]

When James and Tamara defaulted on their loan to the Bank, the Bank commenced foreclosure proceedings. Jerome and Marion deny that they had any knowledge of the mortgages or the assignment until they were made aware of them by the foreclosure proceedings. In March 2001, the Trusts served a Notice of Cancellation of Contract for Deed, pursuant to Minn. Stat. § 559.21, subd. 2a (2002), on James and Tamara and the Bank. The notice described the event of default as the breach of the contract for deed by granting the assignment and the mortgages. The Bank then brought this action to enjoin the cancellation of the contract for deed and for a declaratory judgment that the mortgage and assignment are valid and enforceable.

Both parties filed cross-motions for summary judgment, agreeing that the critical issue was whether the consent clause prohibited the mortgage and assignment without the consent of the vendors. The district court granted the Trusts' motion for summary judgment, holding that the consent clause prohibited the grant of the mortgage and the assignment without the consent of the vendors and that the mortgage and assignment to the Bank were invalid.

The court of appeals affirmed in part and reversed in part, holding that the consent clause prohibited the assignment but not the mortgage. *Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky*, 661 N.W.2d 290, 294 (Minn.App.2003). The court remanded the case for further proceedings, expressly declining to "speculate on the parties' future positions that may or may not result from our holding." *Id.* at 294, n. 7. We granted the Trusts' petition for further review on the issue whether the mortgage is valid but denied the Bank's cross-petition on the issue whether the assignment is valid.

---

**2.** The initial mortgage ran to Southwest State Bank, which was purchased by Bank Midwest. Bank Midwest is currently the holder of the mortgage and will be referred to as the "Bank."

**3.** Although James was a co-trustee of the Trusts, the trust documents provide that the power of the trustees "shall be exercisable by a majority of the trustees * * *." Thus, no single trustee could have consented to the mortgage. There is no evidence that the other co-trustee consented to or was aware of the mortgages or the assignment.

**4.** At oral argument, the Bank argued that after November 9, 2000, James and Tamara could have avoided the restriction of the consent clause by prepaying the balance due on the contract. Because James and Tamara did not offer or attempt to prepay, we do not reach the issue whether such prepayment would have relieved them of the restriction of the consent clause.

■ On appeal from the grant of summary judgment, we must review the record to determine whether there are any genuine issues of material fact and the trial court erred in the application of the law. *Hermeling v. Minnesota Fire and Cas. Co.*, 548 N.W.2d 270, 273 (Minn.1996). Summary judgment is inappropriate where terms of a contract are at issue and those terms are ambiguous or uncertain. *Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). If, however, terms of the contract may be given their plain and ordinary meaning, construction of the contract is a matter for the court and summary judgment may be appropriate. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346–47 (Minn.2003).

As a preliminary matter, we note that we have held that similar consent clauses in contracts for deed are valid and enforceable and can defeat the rights of third parties who deal with the contract vendee. *Larson v. Johnson*, 175 Minn. 502, 505–06, 221 N.W. 871, 873 (1928).[5] We have also held that a contract vendor may cancel the contract for deed based upon the breach of such a consent clause. *Karim v. Werner*, 333 N.W.2d 877, 879 (Minn.1983); *see also* 25 Eileen Roberts, *Minnesota Practice—Real Estate Law* § 6.08(b) (2003).

## I.

■ The Trusts argue that the consent clause is not ambiguous and that the plain meaning of the word "transfer" includes a mortgage. The determination of whether a contract is ambiguous is a question of law and is reviewed de novo. *Republic Nat'l. Life Ins. Co. v. Lorraine*

*Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979). "If a contract is unambiguous, then the language must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh." *Denelsbeck*, 666 N.W.2d at 346–47.

■ The Bank likewise argues that the clause is not ambiguous but proposes the opposite interpretation, that the plain and ordinary meaning of the word "transfer" does not include a mortgage. The district court and the court of appeals each determined that the clause was not ambiguous, but came to different conclusions on its plain and ordinary meaning. These differing interpretations might support an argument that reasonable minds may differ on the plain and ordinary meaning and that the clause is thus ambiguous. But the mere fact that a court has disagreed on the interpretation of contract language is not determinative that the contract language is ambiguous. *Republic Nat'l Life Ins. Co.*, 279 N.W.2d at 354.

One reason why the parties and the courts found support for opposite interpretations is that each focused unduly on the word "conveyance." Thus, the district court looked to the language in the mortgage that the "mortgagee shall *convey* to the lender all right, title and interest in [the property]" and determined that the term "transfer" in the consent clause was synonymous with the word "convey." The court of appeals also focused on the word "convey" but, relying on Minn.Stat. § 559.17, subd. 1 (2002), determined that a mortgage is not a conveyance. Section 559.17 reads in part: "A mortgage of real

---

**5.** In *Larson,* 175 Minn. at 505, 221 N.W. at 872, we recognized that the power of alienation was not unlawfully suspended by a clause in a contract for deed prohibiting assignment without the consent of the vendor. We compared the consent clause to provisions in leases prohibiting subletting. *Id.* We noted

that, just as the lessor had an interest in the caretaker of the property, the vendor has an interest in the vendee. *Id.* at 506, 221 N.W. at 873. Thus, we held that the type of restraint imposed by the consent clause was not unreasonable.

property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure, except as permitted in subdivision 2." Minn.Stat. § 559.17, subd. 1 (2002). The court of appeals dissent disagreed with the majority's reliance on section 559.17 as being misplaced because the consent clause does not use the word "convey." Further, the dissent concluded that section 559.17 cannot reasonably be read to mean that a mortgage is not a conveyance of any kind, but only that it is not the type of conveyance that enables the holder of the mortgage to recover immediate possession. *Lipetzky*, 661 N.W.2d at 295–96.[6]

We agree with the court of appeals dissent that the word "convey" is not controlling. Our task, instead, is to interpret the word "transfer" and, in that context, the meaning of "convey" is only helpful by analogy or comparison. In fact, we conclude that, in common usage, the term "transfer" is understood to be broader than the more technical term "convey," and the broader term should not be limited by the narrower one.[7]

The Trusts refer us to the Black's Law Dictionary definition of "transfer," when used as a noun, to include:

> The sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein, or with the possession thereof, or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, payment, pledge, *mortgage,* lien, encumbrance, gift, security or otherwise * * *.

Black's Law Dictionary 1497 (6th ed.1990) (emphasis added). This definition conceptually and expressly includes a mortgage.

In addition, the Trusts refer by analogy to the definition of "transfer" under Minn. Stat. § 513.41(12) (2002) (with respect to fraudulent transfers): " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."

The Bank counters that some of these definitions of transfer are for its use as a noun and the consent clause uses it as a verb. The Bank suggests that the definition of the word as a verb is: "[t]o convey or remove from one place or one person to another; to pass or hand over from one to

---

**6.** Support for the dissent's interpretation can be found in *Morrison v. Mendenhall,* 18 Minn. 232 (Gil.212) (1872), where we said a mortgage is "a conveyance of an estate or interest in land." A commentator has likewise said "[a] mortgage is included within the definition of a conveyance." 6A Steven J. Kirsch, *Minnesota Practice—Methods of Practice* § 48.17 (3d ed.1990). And the Restatement states "[a] mortgage is a conveyance or retention of an interest in real property to secure the obligation." Restatement (Third) of Property § 1.1 (1997).

**7.** The Bank cites *Hatlestad v. Mutual Trust Life Ins. Co.,* 197 Minn. 640, 643, 268 N.W. 665, 666 (1936), to support the contention that a mortgage is not a "conveyance." Al-

though *Hatlestad* discusses the concept that a modern mortgage is a "mere lien or security," it continues by stating that "[t]he mortgagee may pass title upon condition broken and in default of redemption. That is no less than a power, upon condition subsequent, to convey, not only a mere interest, but also title in fee." *Hatlestad,* 197 Minn. at 643, 268 N.W. at 666–67. *See also Land O'Lakes Dairy Co. v. Wadena County,* 229 Minn. 263, 271, 39 N.W.2d 164, 169–70 (1949) (stating that "[a] mortgage of realty is a conveyance of realty intended as security for the payment of money"); Petition of S.R.A., 213 Minn. 487, 494, 7 N.W.2d 484, 488 (1942) (stating that a mortgage is "in form a conveyance.").

another, esp. to change over the possession or control of." Black's Law Dictionary 1504 (7th ed.1999). The Bank argues that a mortgage does not meet this definition because the grant of a mortgage does not produce an immediate change in possession, which can only occur after default and foreclosure. But even this definition of "transfer" does not expressly state that the change of possession must be immediate or be effective upon the mere grant of the mortgage. The grant of the mortgage does confer upon the mortgagee the power to obtain possession, albeit a conditional power that requires default and foreclosure.

The Bank argues that other language in the contract for deed demonstrates that the consent clause does not apply to a mortgage. The contract for deed states that Jerome and Marion will convey a warranty deed for marketable title to James and Tamara when full performance of the contract for deed is complete, but excepts from the requirement of marketable title, those "liens and encumbrances * * * which Purchasers have created, suffered or permitted to accrue after the date of this contract * * *." The Bank argues that this language implies that the vendee may place liens and encumbrances, such as a mortgage, on the property. But this exception does not specifically refer to liens and encumbrances that have not been consented to by the vendors. It can reasonably be read to only apply to liens or encumbrances for which consent was obtained.[8]

■ Finally, the Bank argues that to interpret "transfer" to include a mortgage would be redundant in light of the defini-

tion of property dispositions included in Minn.Stat. § 462.391, subd. 13 (2002), which states: "A commission may sell, convey, mortgage, create a security interest in, lease, exchange, transfer, or dispose of all or part of its real or personal property or an interest in property, wherever located in the state." But there is no rule of construction that precludes redundancy in a statute. And, because "selling" includes "conveying," and creating a "security interest" includes a "mortgage," redundancy appears to be a part of this statutory language.

We hold that the plain and ordinary meaning of "transfer" includes the grant of a mortgage. Accordingly, we conclude that the grant of the mortgages by James and Tamara to the Bank was in breach of the consent clause.

## II.

■ The conclusion that the grant of the mortgages was in breach of the consent clause does not necessarily mean that the mortgages are invalid. In *Minnesota Central Railroad Co. v. MCI Telecommunications Corp.*, 595 N.W.2d 533, 538 (Minn.App.1999), the court of appeals held that a grant of an easement contrary to a consent clause was ineffective where the recipient of the easement had constructive notice of the consent clause through the recording of the contract for deed. We have likewise held that a vendor in a contract for deed, who retook the property from the vendee, retook free of an assignment of the vendee's interest of which the vendor had no notice and for which the vendor gave no consent. *Larson*, 175 Minn. at 506, 221 N.W. at 873. We ex-

---

8. Further, if we were to conclude that this exception conflicts with the language in the consent clause, contract construction compels us to determine that the more specific language takes precedence over the more general language, and we would defer to the language in the consent clause. *See, e.g., Employers Liability Assur. Corp. v. Morse*, 261 Minn. 259, 264, 111 N.W.2d 620, 624–25 (1961).

plained that the assignee who took an assignment of the contract for deed must be charged with knowledge of the terms of the contract, including specifically the provision requiring consent to any assignment. *Id.* at 506, 221 N.W. at 873.

In this case, the Bank took the mortgage with constructive knowledge of the consent clause because the contract for deed was recorded. The title opinion provided to the Bank referred to the recording of the contract and the specific language of the consent clause was included in the abstract of title. Further, because the Bank also took an assignment of the vendee's interest in the contract, it may be charged with knowledge of the terms of the contract, independent of recording.

Because the bank had constructive notice of the consent clause, the mortgage is invalid. Accordingly, we reverse the court of appeals and reinstate the district court's grant of summary judgment.

Reversed.