**CITY OF CLOQUET, petitioner, Respondent,**

v.

**Julie CRANDALL, et al., Appellants,**

**Lyn Johnson, et al., Respondents Below.**

**No. A12–0391.**

Court of Appeals of Minnesota.

Dec. 10, 2012.

William T. Helwig, Frank Yetka, Rudy Gassert Yetka & Pritchett, P.A., Cloquet, MN, for respondent.

Dan Biersdorf, E. Kelly Keady, Biersdorf & Associates, P.A., Minneapolis, MN, for appellants.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

This condemnation appeal concerns only the compensation method and amount; it

does not concern the authority to condemn or who should receive the compensation. The City of Cloquet exercised its eminent domain authority to take commercial real property that Kerry and Julie Crandall were purchasing under a contract for deed. The district court set the Crandalls' compensation at $198,000 under the minimum-compensation provisions of Minnesota Statutes section 117.187 (2008), reasoning that contract for deed purchasers are "owners" entitled to minimum compensation as measured by a "comparable property" under that statute. The Crandalls appeal, arguing that the district court erred by selecting a "comparable property" that was not truly comparable for calculating minimum compensation. The city also appeals, arguing that the district court erred by holding that the Crandalls were "owners" within the scope of the statute. Because the definition of "owners" in section 117.187 does not include contract for deed vendees, we reverse and remand.

## FACTS

Kerry and Julie Crandall were operating their auction business out of a downtown Cloquet building when the City of Cloquet took the property by condemnation for construction of a new human services building. The city obtained the Crandall parcel under the "quick take" provisions of Minnesota Statutes section 117.042 (2008). The district court granted title to the city in July 2010 and directed the city to deposit $198,000 into a compensation account after three court-appointed commissioners determined that $198,000 was fair compensation under a fair-market-value analysis and also under a minimum-compensation analysis following Minnesota Statutes section 117.187 (2008).

At the time of the parcel's taking, the Crandalls were purchasing it under a contract for deed. Weeks after the taking, in August 2010, the contract for deed sellers executed a contract for deed satisfaction, stipulating with the Crandalls that the contract was fully paid. In September 2010, more than a month after the taking but before valuation, the district court recognized the satisfaction and entered a stipulated order observing that the sellers disclaimed any continuing interest in the property or in the eminent domain proceedings.

The parties disputed the compensation value. The district court adopted the commissioners' valuation after a de novo bench trial. Before the trial, the city had unsuccessfully moved to exclude any evidence bearing on a minimum-compensation analysis, arguing that the Crandalls were, as contract for deed vendees rather than "owners," outside the scope of section 117.187. Appraiser John Vigen testified as an expert witness for the city, opining that a property known as the "Carlton property" is a "comparable property" to the Crandall parcel. Vigen testified that although the Carlton property's building was smaller, older, of poorer construction quality, and had inferior access by comparison to the Crandall parcel, it was "comparable" within the meaning of the statute because the Crandalls' auction business did not require all the space available at the Crandall parcel and because the minimum-compensation award that the Crandalls would receive would meet their costs to renovate and expand the Carlton property. Vigen also pointed out that the Carlton property zoning classification allowed it to be used as an auction business.

The district court received contrary testimony from the Crandalls' real-estate expert, David Reach. Reach testified that the small size, poor condition, and limited access made the Carlton property unsuitable for the Crandalls' business. He instead identified as comparable a property

formerly used as a car dealership outside of town, known as the Kolar property. But the Kolar property had 20 times the acreage of the Crandall property and was almost 4 times as expensive. Reach opined that it was nonetheless comparable because it included a building with at-grade floor space equal to the Crandall parcel building, and that it was of similar age and condition.

After trial, the parties made various unsuccessful motions. The Crandalls moved to exclude Vigen's testimony, arguing that he had used the wrong method to determine whether the properties are comparable within the meaning of section 117.187. They also moved the district court to exclude the testimony of the commissioners, arguing that their independent investigations after public hearings violated Minnesota Statutes section 117.085 (2008). The city renewed its motion to exclude the Crandalls as "owners" under the minimum-compensation statute.

The district court denied these motions and found that the Carlton property was a comparable property. It therefore held that the Crandalls were entitled to $198,000 in compensation under the minimum-compensation statute. The Crandalls and the city separately appeal.

## ISSUE

Did the district court err when it ruled that the Crandalls were "owners" within the meaning of Minnesota Statutes section 117.187?

## ANALYSIS

Both sides in this appeal argue that the district court misinterpreted or misapplied the minimum-compensation statute, section 117.187:

> When an owner must relocate, the amount of damages payable, at a minimum, must be sufficient for an owner to purchase a comparable property in the community and not less than the condemning authority's payment or deposit under section 117.042, to the extent that the damages will not be duplicated in the compensation otherwise awarded to the owner of the property. For the purposes of this section, "owner" is defined as the person or entity that holds fee title to the property.

The Crandalls forward various factual, legal, and procedural theories to maintain that the district court mistakenly found the Carlton property to be the "comparable property" to establish their minimum compensation. The city contests those theories, but, more fundamentally, it maintains that we need not reach them because the district court erred on the threshold question of whether the minimum-compensation statute even applies because the Crandalls are not "owners" under the statute. The city is correct. Before we explain why this is so, we must address the effect of the district court's September 2010 order recognizing the August 2010 satisfaction of the contract for deed.

### A. Effect of the Contract for Deed Vendors' Satisfaction

We first decide the effect of the September 2010 order recognizing the August 2010 satisfaction of the contract for deed. The Crandalls argue that the order's precipitating stipulated satisfaction functioned as an assignment to them of both the vendors' and vendees' rights in the contract for deed, vesting in them "both the equitable and legal fee interest in the property." But they provide no legal support for the premise that a post-taking satisfaction of a contract for deed retroactively grants the vendees with the vendors' rights or fee title in the property.

■ Neither the stipulated satisfaction nor the order is an assignment. An assignment requires the grantor's manifest intention to assign a specific right. *Minn. Mut. Life Ins. Co. v. Anderson*, 504 N.W.2d 284, 286 (Minn.App.1993), *review denied* (Minn. Oct. 19, 1993). But the stipulated satisfaction of the contract for deed states only that it releases the Crandalls from any contract obligations. There having been no explicit assignment, neither the satisfaction nor the court's recognition of it conferred to the Crandalls fee title to the property. Additionally, the district court had already transferred title to the city in its July 2010 order. So by August when the satisfaction was executed (and by September when the court recognized it), the vendors had no title to transfer to the Crandalls. We hold that the September district court order reflects only a release of contractual rights; it does not vest fee title in the Crandalls.

## B. Contract for Deed Vendees Are Not Fee Title Owners

■ The Crandalls, as contract for deed vendees, contend that they are entitled to minimum-compensation benefits under section 117.187. Minnesota's minimum-compensation statute restricts itself to benefit owners, and it defines "owner" as "the person or entity that holds fee title to the property." Minn.Stat. § 117.187 (2008). So the Crandalls argue that contract for deed vendees are "owners" under section 117.187, requiring us to interpret the term.

We review de novo the legal question of the interpretation of a statute. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). Section 117.187 restricts "owner" to those who hold "fee title to the property," but it does not define "fee title." We interpret statutory terms in harmony with surrounding sections to avoid conflicting interpretations, and we avoid interpretations that would render portions of any statute superfluous, void, or insignificant. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Terms in surrounding sections teach that contract for deed vendees do not possess fee title to a property. Section 117.036, enacted simultaneously with section 117.187, defines "owner" as "fee owner, contract purchaser, or business lessee who is entitled to condemnation compensation under a lease." This classification informs us that the legislature sees fee owners and contract purchasers as separate classes. "Contract purchaser" is not expressly defined, and this section is the only one in the Minnesota Statutes where the term is used in the context of real estate. *Cf.* Minn.Stat. §§ 59B.03, subd. 5 (2008) (using "contract purchaser" in service contract context); 473.811, subd. 4 (2008) (using "contract purchaser" in a waste management context). In the context of real estate, we are convinced by the literal meaning of "contract purchaser" that the term includes contract for deed purchasers. So to interpret "fee title" owner in section 117.187 to include contract for deed vendees would indicate that the term "contract purchaser" in section 117.036 is superfluous. And we must therefore infer that the legislature intended to exclude contract for deed purchasers from the scope of section 117.187. If the legislature wanted to include contract purchasers within its section 117.187 definition, presumably it would have included them there explicitly just as it did in section 117.036.

We are not persuaded otherwise by the Crandalls' arguments that "fee owner" in section 117.036 includes contract for deed vendees, that contract for deed vendees are not the same as "contract purchasers," and that contract for deed vendees have protected equitable interests. The separation in section 117.036 into "owner" subca-

tegories indicates that the legislature was separately identifying the interests it sought to protect. It would be strange for the legislature to separately identify two groups—contract purchasers and business lessees—while lumping contract for deed purchasers and unknown other groups under the label "fee owners," which traditionally includes only those holding legal title. And a legislative intent to protect some equitable interests does not demonstrate a legislative intent to protect any equitable interest held by contract for deed vendees.

Interpreting "fee title" as not including contract for deed vendees also corresponds with how that term is used in other Minnesota statutes and case law. For example, section 507.092 (2010) states that "[n]o contract for deed or deed conveying fee title to real estate shall be recorded" without identifying "the person to whom future tax statements should be sent." The separate specification of "contract for deed" and "deed conveying fee title" demonstrates that the legislature does not presume that a contract for deed includes fee title. And the supreme court has held that it is the transfer of the *vendor's* interest in a contract for deed, rather than the *vendee's* interest, that carries "fee title" with it. *See Gate Co. v. Midwest Fed. Sav. & Loan Ass'n*, 324 N.W.2d 202, 207 (Minn.1982); *see also Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 177 (Minn. 2004) (noting the transfer by contract for deed vendors of fee title along with their vendors' interest); *cf. Lundell v. Coop. Power Ass'n*, 707 N.W.2d 376, 382 (Minn. 2006) (noting that in an eminent domain action the condemning authority's interests may be "fee title" or "less than fee title").

█ Section 117.187 is not ambiguous, but even if it were, our conclusion would be the same. When a statute is ambiguous, we sometimes consider legislative history, including tape recordings of commit-

tee hearings, as a factor in determining intent. *First Nat'l Bank of Deerwood v. Gregg*, 556 N.W.2d 214, 217 (Minn.1996). The statute's history strongly suggests that the legislature intended to exclude contract for deed vendees from its reach. When the Eminent Domain Conference Committee added the definition of "owner" to section 117.187, committee members specifically discussed the meaning of the language at issue here. Legislative counsel Bonnie Berezovsky asserted (without any objection or contrary view offered by committee members) that "fee owner would not include a purchaser under a contract for deed." Hearing on S.F. 2750 Before the Eminent Domain Conf. Comm. (Apr. 28, 2006), at 1:56:23. Although the opinion of legislative counsel, who is not herself an elected lawmaker, is not proof-positive of legislative intent, we find it persuasive, if not compelling, that her comment was offered as a legal explanation to legislators who were directly discussing the question of what is and is not included as an "owner" in section 117.187. Anyway, this legislative history merely confirms our understanding, which we derive from the statute's plain and unambiguous language.

The Crandalls cite *Moorhead Economic Development Authority v. Anda*, 789 N.W.2d 860 (Minn.2010), to argue that section 117.187 is part of a general legislative reaction to *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), and that the legislative purpose was "to make sweeping changes to limit the government's power of eminent domain and to provide additional benefits to property owners" and that "statutory eminent domain provisions should be liberally constructed in favor of property owners." The Crandalls point to no evidence linking the minimum-compensation statute to any post-*Kelo* backlash. But even if they did and even if we were to read section

117.187 liberally to protect property owners, it does not follow that we should also liberally construe the definition of property "owners" or the meaning of fee title holders.

■■■ The Crandalls finally contend that not applying section 117.187 to contract for deed vendees would allow for the absurd result of "punishing an owner that has chosen one legislatively approved financing method over another." But it is not the court's role to decide what, as a matter of policy, is "absurd"; that is a legislative function. Our role as a court is limited to applying the plain meaning of a statute unless "the legislative purpose was clear and the plain meaning would utterly confound that purpose." *Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 761–62 (Minn. 2003). The legislature has not clearly indicated a statutory purpose that is utterly confounded by treating contract for deed purchasers in takings cases differently from those holding legal title. So even if we supposed that any statutory distinction between contract for deed vendees and fee owners in takings compensation was illogical or unfair, "[t]he legislature is at liberty to ignore logic and perpetrate injustice so long as it does not transgress constitutional limits." *State ex rel. Timo v. Juvenile Court*, 188 Minn. 125, 128–29, 246 N.W. 544, 546 (1933). We therefore reject the Crandalls' absurdity argument.

Because the Crandalls were not fee title owners entitled to minimum compensation under Minnesota Statutes section 117.187, the district court erred by denying the city's motion to exclude the Crandalls' minimum-compensation evidence at trial. Because the district court should not have considered the Crandalls' claims under section 117.187 at all, we need not address the Crandalls' various challenges to the district court's consequent minimum-compensation determinations.

## DECISION

We reverse the judgment because the district court erred by denying the city's motion to preclude the Crandalls from submitting minimum-compensation evidence at trial. Because we cannot determine from the record whether all issues relating to fair-market-value compensation were resolved or whether additional argument and fact-finding is necessary, we remand for any further proceedings for the district court to resolve those issues, if any, consistent with this opinion.

**Reversed and remanded.**